NO. COA13-1339

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

IN THE MATTER OF THE                    Orange County
ESTATE OF PETER HEIMAN,                 No.  09 E 388


Appeal by Executrix from Order entered 28 June 2013 by Judge Robert H. Hobgood in Superior Court, Orange County.  Heard in the Court of Appeals 10 April 2014.

> *Richard Bircher and Russell J. Hollers III, for petitioner-appellee.*
>
> *Levine & Stewart, by James E. Tanner III, for respondent-appellant.*


STROUD, Judge.

Heidi Venier, executrix of Peter Heiman's estate, appeals from an order entered 28 June 2013 by the superior court affirming an order of the Orange County Clerk of Superior Court and concluding that Audrey Layden, Mr. Heiman's wife, was entitled to an elective share of $25,970.35 from the estate. We reverse.

## I.   Background

Peter Heiman ("decedent") passed away on 7 July 2009. Prior to his death, he had executed a will naming Heidi Venier,

his only child, the sole beneficiary and executrix of his estate. Mr. Heiman was survived by his wife, Ms. Layden, and Ms. Venier, his daughter from a prior marriage. Ms. Venier applied for and received letters testamentary on 3 August 2009. As the surviving spouse, Ms. Layden petitioned for a year's allowance of $10,000 and an elective share of Mr. Heiman's assets.

On 20 October 2009, Ms. Venier, as executrix, filed a complaint for declaratory judgment against Fidelity Investments. She sought to have the estate designated as beneficiary for two accounts, an individual retirement account (IRA) and another investment account. Mr. Heiman had designated as beneficiary for these accounts a trust which was mentioned in a previously revoked will but never created.[1] On or about 1 December 2009, Ms. Venier filed an inventory for decedent's estate. The inventory listed $377,795.45 in total assets. That amount included the IRA, which was valued at $38,908.99.

---

[1] According to the brief filed by the Estate in the appeal to the superior court, due to the "the lapse of the Heiman Trust as the designated beneficiary," the "default beneficiary designation" for the IRA was the surviving spouse, Ms. Layden. We are unable to discern from the record how or why the "default beneficiary" of the IRA was not included as a party to the declaratory judgment action regarding disposition of the IRA, but she was not.

Before Ms. Layden's petition for elective share was heard by the Clerk of Superior Court, the parties voluntarily attended mediation in an effort to resolve the matter and entered into a settlement agreement, executed by Ms. Layden on 18 May 2010 and by Ms. Venier, as executrix, on 19 May 2010. The agreement stated that in consideration for the payment of $65,000 from the assets owned by decedent, "the parties accept full compromise, settlement and satisfaction of, and the final release and discharge of all actions, claims and demands whatsoever that each party may have against the other . . . ." Under the agreement, both parties released any claims against the other and the estate agreed that Fidelity Investments would distribute the IRA, then worth approximately $40,000.00, directly to Ms. Layden, and that she would receive approximately $25,000.00 from another Fidelity account.

After the agreement was signed, Ms. Venier dismissed her declaratory judgment action against Fidelity. But Ms. Layden refused to dismiss her petition for an elective share. She argued that "the alleged 'settlement' was procured by a material misrepresentation in the estate file." On 9 August 2012, the Orange County Clerk of Superior Court noticed his intent to rule

on the elective share petition and heard the case on 4 December 2012.

The Clerk found that the existence of the Fidelity declaratory judgment lawsuit was not disclosed to Ms. Layden. He therefore concluded that the settlement agreement was unenforceable as a waiver of Ms. Layden's elective share rights. The Clerk found that the total net assets of decedent were valued at $363,851.50. It concluded that Ms. Layden was entitled to a one-quarter share, $90,962.88. It further found that Ms. Layden had already been paid $64,947.62 (the amount she had already received under the settlement agreement). It therefore awarded $25,970.35 to Ms. Layden.

Ms. Venier appealed to the superior court on 27 December 2012. By order entered 28 June 2013, the superior court fully adopted the findings of fact made by the Clerk of Superior Court and affirmed the order. Ms. Venier filed written notice of appeal to this Court on 24 July 2013.

## II. Standard of Review

Ms. Venier appeals from the superior court's order affirming the Clerk's order regarding Ms. Layden's elective share petition. The superior court fully adopted the clerk's findings of fact. Ms. Venier does not contest any of these

findings on appeal. She only challenges the trial court's conclusion that Ms. Layden was not provided fair and reasonable disclosure of the property and obligations of decedent and that the settlement agreement was therefore unenforceable.

Thus, the only issue on appeal is one of law, which we review *de novo*. *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the trial court." *In re Estate of Pope*, 192 N.C. App. 321, 331, 666 S.E.2d 140, 148 (2008) (citation, quotation marks, and brackets omitted), *disc. rev. denied*, 363 N.C. 126, 673 S.E.2d 129 (2009).

III. Full and Fair Disclosure

The issue for us to consider is a narrow one, but one of first impression in North Carolina: what does it mean for a surviving spouse to be "provided a fair and reasonable disclosure of the property and financial obligations of the decedent" for purposes of waiver under N.C. Gen. Stat. § 30-3.6 (b)(2) (2009)?

Ms. Layden urges us to consider the required disclosure in light of the fiduciary duty she contends that Ms. Venier owed her as executrix of the decedent's estate. Ms. Venier denies

that she owed Ms. Layden any such duty because Ms. Venier is a surviving spouse who has filed a claim for an elective share, not a beneficiary under the will. We need not decide this issue because even assuming that Ms. Venier owed Ms. Layden a fiduciary duty, the existence of the Fidelity lawsuit was not a material fact and failure to disclose it was not a breach of any duty owed—fiduciary or statutory.

A.    Elective Share Statutes

The elective share statutes are quite detailed and the calculation of an elective share is highly fact-dependent. In deciding what information Ms. Layden was required to disclose, it is necessary to understand the context. Therefore, before addressing the issue of waiver, we will lay out the calculation of elective share as applicable to this case.

Under N.C. Gen. Stat. § 30-3.1, *et seq.*, a wife who survives her husband[2] may choose to take an "elective share" of the decedent's assets rather than taking under the decedent's will.  The "applicable share" of the decedent's assets to which a surviving spouse is entitled depends on whether the decedent had a prior spouse and whether the decedent is survived by children or other lineal descendants. N.C. Gen. Stat. § 30-

---

[2] Or vice-versa.

3.1(a) (2009). A second or successive spouse of a decedent survived by one or more lineal descendants is entitled to a reduced share. N.C. Gen. Stat. § 30-3.1(b). Where the decedent is survived by a second spouse and one child, the applicable share is one-quarter of the decedent's total net assets. *See id.*

The term "total net assets" is defined by N.C. Gen. Stat. § 30-3.2(4) (2009) as the decedent's total assets reduced by any year's allowances "to persons other than the surviving spouse and claims." "Total assets" is in turn defined as the sum of the values listed in N.C. Gen. Stat. § 30-3.2(3f), which includes *inter alia* "[b]enefits payable by reason of the decedent's death under any policy, plan contract, or other arrangement." N.C. Gen. Stat. § 30-3.2(3f)(d). Such benefits include "[i]ndividual retirement accounts." N.C. Gen. Stat. § 30-3.2(3f)(d)(5).

The surviving spouse is entitled to her share of the total net assets reduced by the value of the net property passing to the surviving spouse. N.C. Gen. Stat. § 30-3.1(a). The "net property passing to the surviving spouse" includes any property that passes by "beneficiary designation" (except federal social security) reduced by the amount of any death taxes or claims payable out of such assets. N.C. Gen. Stat. § 30-3.2(2c),(3c)(a).

Taking these statutes as a whole, if the decedent owns an individual retirement account at the time of his death, it is included in the decedent's total net assets for purposes of calculation of the elective share. If someone other than the surviving spouse is the IRA beneficiary, then the elective share to which the surviving spouse is entitled will be her share of the total net assets—including the IRA—without any reduction in value. If, however, an individual retirement account owned by the decedent passes by beneficiary designation to the surviving spouse, her elective share will be reduced by the value of the IRA. In either case, the total value of the decedent's assets to which a surviving spouse is entitled is simply the applicable share of the total net assets of the decedent.

A surviving spouse entitled to an elective share may waive her right in writing. N.C. Gen. Stat. § 30-3.6(a). However, "[a] waiver is not enforceable if the surviving spouse proves that: (1) The waiver was not executed voluntarily; or (2) The surviving spouse or the surviving spouse's representative making the waiver was not provided a fair and reasonable disclosure of the property and financial obligations of the decedent . . . ." N.C. Gen. Stat. § 30-3.6(b).

B.   "Fair and Reasonable Disclosure"

Here, Ms. Layden does not truly argue that the settlement agreement was not a waiver of her elective share rights nor that the waiver was involuntary. Indeed, it is clear that the agreement was intended by all parties to fully settle Ms. Layden's elective share claim. The agreement between Ms. Venier, as executrix of the Heiman Estate, and Ms. Layden stated that it was intended to be the "final release and discharge of all actions, claims and demands whatsoever that each party may have against the other." Such "claims and demands" include Ms. Layden's claim for elective share.

Nevertheless, Ms. Layden contends that the agreement is unenforceable because Ms. Venier failed to provide "fair and reasonable disclosure" of decedent's assets under N.C. Gen. Stat. § 30-3.6(b). Ms. Layden further asserts that she relied, to her detriment, on the "misrepresentations" of Ms. Venier and that therefore the waiver was unenforceable as a contract induced by fraud. Specifically, she contends that Ms. Venier concealed the existence of the estate's lawsuit against Fidelity. Regardless of whether the issue is considered as a matter of common law fraud or statutory application, if the fact Ms. Venier failed to disclose was immaterial, then the agreement would remain enforceable. *See Harton v. Harton*, 81 N.C. App.

295, 297, 344 S.E.2d 117, 119 ("A cause of action for fraud [may be] based on . . . a failure to disclose a *material* fact relating to a transaction which the parties had a duty to disclose." (citations omitted) (emphasis added)), *disc. rev. denied*, 317 N.C. 703, 347 S.E.2d 41 (1986).

"A fact is material[] if[,] had it been known to the party, would have influenced that party's decision in making the contract at all." *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 176-77, 684 S.E.2d 41, 53 (2009). As in any other settlement negotiation, the material facts are those that allow the party to calculate her best alternative to a negotiated agreement and to understand the effect of the agreement.

Ms. Layden had two alternatives: to proceed with her claim for elective share and receive the amount as ordered by the Clerk of Court, or to enter into a settlement agreement with the estate. If the surviving spouse knows what property decedent owned and what financial obligations were owed, she can accurately calculate the share to which she would be entitled absent a settlement. If the amount of the "total net assets" of the estate is known, it is a simple matter to calculate 25% of this amount, and this amount is what the surviving spouse would receive as her elective share by order of the Clerk; the total

amount paid to the surviving spouse by the estate would also be reduced by any sums which passed to her by "beneficiary designation," excluding the amount of any death taxes or claims payable out of such assets. N.C. Gen. Stat. § 30-3.2(2c),(3c)(a).[3] But whether the funds are paid to the surviving spouse entirely by the estate or partially by the estate and partially as a direct distribution to the surviving spouse as beneficiary of an account, the amount received by the surviving spouse would be the same.

Here, the existence of the lawsuit against Fidelity was not a material fact because it had no relevance to the calculation of the share of the decedent's total net assets to which Ms. Layden would be entitled. Decedent owned an IRA valued at $38,908.99. This asset was included in the total net assets owned by decedent, valued at $379,796.54, and disclosed on the Inventory for Decedent's Estate of 1 December 2009. The IRA was listed in the section of the Inventory for "Stocks and Bonds In the Sole Name of Decedent or Jointly Owned Without Right of Survivorship" and was identified as a "Fidelity Traditional IRA" with the correct account number listed and the value stated as

---

[3] Ms. Layden does not contend, and the record does not reflect, any "death taxes or claims payable out of" the IRA assets, so for our purposes the only relevant number is the total value of the IRA which passed to Ms. Layden.

$38,908.99. The only difference in the Inventory, had the IRA been listed correctly, would be that it would have been listed under Part II of the form, instead of Part I, as "Stocks/Bonds/Securities Jointly Owned With Right Of Survivorship or registered in beneficiary form and automatically transferable on death." The value, which was the only relevant information for purposes of calculating Ms. Layden's elective share, would be the same.

Ms. Layden, as a second spouse to a decedent with one living child, was entitled to one quarter of decedent's total net assets. This sum could easily be calculated at mediation based upon the values of the decedent's property which had all been disclosed, although some expenses, such as the administrative costs, could only be estimated. Ultimately, the trial court found that there were $15,945.04 in administrative costs and reduced the total net assets by that amount, resulting in total net assets of $363,851.50. Ms. Layden was entitled to a one-quarter share, $90,962.88. Ms. Layden could have calculated this amount based on the information provided to her by Ms. Venier.[4]

---

[4] In addition, Ms. Layden was fully aware, based upon documents filed in this matter, that Ms. Venier was seeking to have any rights that she may have related to her marriage to decedent

Even if the IRA had been distributed to Ms. Layden prior to the mediation, based upon her status as the default beneficiary, the total net assets would have still been the same and Ms. Layden would still be entitled to $90,962.88 from those assets. But she would not be entitled to receive $90,962.88 in addition to the full value of the IRA. Her elective share would be reduced by the value of the IRA, $38,908.99, as the Clerk correctly determined. So, no matter which party is designated the beneficiary of the IRA, the total value of the assets to which Ms. Layden would have been entitled remains the same. Given the information provided, Ms. Layden fully knew the amount to which she would be entitled if she declined to settle the dispute. She settled it nonetheless.

Indeed, it may seem odd that Ms. Layden and Ms. Venier had such a heated dispute regarding the seemingly simple mathematical calculation of this elective share claim that nearly a year passed before it was resolved at mediation, an additional two years before being heard by the Clerk, and that this appeal would be before this Court nearly five years after the decedent's death. The reasons are not apparent above because of the single legal issue presented on appeal, but

eliminated on a theory of equitable estoppel.

before the Clerk and trial court, the reasons were clear. Essentially, tragic circumstances surrounded decedent's death, and relations between Ms. Layden, as his second wife, and Ms. Venier, his daughter, were acrimonious. Because of these circumstances, Ms. Venier sought to prevent Ms. Layden from claiming an elective share. Decedent and Ms. Layden had been in the process of negotiating a separation agreement when he died.

Before the trial court, Ms. Venier summarized her argument as follows:

> As a matter of fundamental fairness, Mr. Heiman and Ms. Layden had a deal; the terms were certain, both of them were acting in accordance with these terms, and for all intents and purposes the deal was complete but for their signatures and the subsequent payment of a modest sum of money. Beyond its sheer gall and hypocrisy, it is not merely wrong, it's a travesty that Ms. Layden should lay claim to a quarter of Mr. Heiman's estate on the basis of a short, late in life, unhappy marriage that ended in separation and suicide, when she had already agreed to waive any claim to the estate. The Court must not allow such an injustice to occur.

Although Ms. Venier's attempts to avoid the elective share were unsuccessful and she does not challenge Ms. Layden's entitlement to an elective share on appeal, there were other disputed issues existing at the time of the mediation. In fact,

the value of the decedent's estate may have been the only undisputed issue in the settlement negotiations. Viewed in this light, Ms. Layden's agreement to settle the elective share claim for a bit less than the full amount of the statutory share—where the value of the total net estate was known—is quite reasonable.

The Fidelity lawsuit, as discussed above, solely concerned the proper beneficiary of the account. It did not affect the ownership of the account or its value—it was owned by the decedent at his death and that fact is undisputed. It had no bearing on the calculation of the share to which Ms. Layden was entitled, so we see no reason that disclosure of that fact would have affected in any way Ms. Layden's decision to settle. Ms. Layden has not claimed that any other material fact had been concealed. Moreover, Ms. Venier, as executrix, fully performed her part of the negotiated agreement, allowing two of the Fidelity accounts to pass to Ms. Layden. Ms. Layden, by contrast, failed to perform her contractual duties by refusing to dismiss her elective share petition.

Given the immateriality of the Fidelity lawsuit to the calculation of an elective share, we conclude that Ms. Venier fully and fairly disclosed all material information to Ms. Layden. Ms. Layden was fully aware of all of the decedent's

assets and liabilities when she decided to waive her right to an elective share and to enter into the settlement agreement. The settlement agreement constituted a knowing and voluntary waiver of Ms. Layden's elective share rights. We therefore hold that the superior court erred in concluding that the settlement agreement was not an enforceable waiver of Ms. Venier's right to an elective share. We reverse the trial court's order affirming that of the Clerk of Superior Court.

## IV. Conclusion

For the foregoing reasons, we conclude that the existence of the Fidelity lawsuit was not a material fact. Therefore, Ms. Venier's failure to disclose its existence does not make the settlement agreement unenforceable. We hold that the superior court erred in concluding that the agreement was not an enforceable waiver of Ms. Layden's elective share rights. We therefore reverse its order affirming the order entered by the Clerk of Superior Court.

REVERSED.

Judges HUNTER, JR., Robert N. and DILLON concur.