An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-286

Filed:  6 October 2015

Wake County, No. 14 JA 131

IN THE MATTER OF:  J.R.

Appeal by respondent father from order entered 1 December 2014 by Judge Keith Gregory in Wake County District Court.  Heard in the Court of Appeals 8 September 2015.

> *Anthony H. Morris for petitioner-appellee Wake County Human Services.*
>
> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by J. Mitchell Armbuster, for guardian ad litem.*
>
> *Assistant Appellate Defender Joyce L. Terres for respondent-appellant father.*

McCULLOUGH, Judge.

Respondent-father appeals from an order adjudicating his son "Jonah"[1] a neglected juvenile under N.C. Gen. Stat. § 7B-101(15) (2013).  Because the evidence at the adjudicatory hearing and the trial court's findings of fact do not support the conclusion that Jonah was neglected, we reverse.

I.      Background

---

[1] The parties stipulated to this pseudonym to protect the child's privacy.

Jonah was born out of wedlock in September 2012 and thereafter resided with his mother ("respondent-mother"). Respondent-mother has three older children who were placed in foster care in 2010. While in foster care, respondent-mother's eldest daughter disclosed prior sexual abuse by respondent-father.[2] In November 2011, respondent-father pled guilty to taking indecent liberties with a minor. He received a suspended prison sentence and was placed on supervised probation for three years. As a condition of his probation, respondent-father was forbidden "to socialize or communicate with individuals under the age of eighteen (18) in work or social activities unless accompanied by a responsible adult who is aware of the abusive patterns and is approved in writing by the supervising [probation] officer."

On 1 May 2014, Wake County Human Services ("WCHS") received a report that respondent-mother "was homeless and living from place to place" with Jonah; that she was allowing respondent-father to have contact with Jonah; and that she was using marijuana in Jonah's presence. After meeting with a WCHS social worker, respondent-mother signed a safety plan on 2 May 2014 agreeing not to allow respondent-father to have any contact with Jonah. Respondent-father signed a similar safety plan on 8 May 2014 agreeing to have no contact with his son.

On 2 June 2014, WCHS obtained nonsecure custody of Jonah and filed a juvenile petition claiming that he was neglected and dependent. The petition alleged

---

[2] The judgment revoking respondent-father's probation indicates that the sexual abuse occurred in December 2006.

that respondent-father had been arrested for violating his probation after police observed Jonah sitting on his lap on 22 May 2014. It accused respondent-mother of "willingly allowing this contact to occur." The petition further alleged that respondent-mother had "lost her housing through the Raleigh Rescue Mission . . . for not complying with the program recommendations" and had obtained temporary shelter for herself and Jonah at the Salvation Army through 12 June 2014. Moreover, at the time WCHS took Jonah into custody, respondent-mother "was not able to provide an appropriate alternative placement option for the child."

At the 4 November 2014 adjudicatory hearing, a Raleigh police officer testified that on 22 May 2014, he observed respondent-mother "in the company" of respondent-father, who was "pushing a stroller." The officer saw respondents get onto a Capital Area Transit ("CAT") bus. He followed them onto the bus and observed respondent father "sitting on the CAT bus . . . with a small child on his lap." The officer left the bus and reported the incident to respondent-father's probation officer, who filed a violation report based thereon. Respondents both testified that they had encountered each other by chance at the bus stop and were taking the bus to different destinations.

The trial court entered an order adjudicating Jonah neglected on 1 December 2014. At the hearing, the court made the following findings in support of the adjudication:

> 8.     . . . [Respondent-mother's] three older children came into foster care June 11, 2010 due to unstable housing and

lack of proper care. Her youngest child was adopted and the two older children were placed in the Guardianship of [her] mother. [Respondent-mother's] parental rights to one child have been terminated.

9.     Respondent-mother's] daughter disclosed sexual abuse by [respondent-father], and he was arrested and pled guilty to four counts of indecent liberties in 2013.

10.    That on May 1, 2014, a report was made alleging that [respondent-]mother was homeless and living from place to place with [Jonah]. [Respondent-mother] had stayed with a friend for as many as four months, had resided at a Super 8 motel for a couple of months, at a rooming house and at the Raleigh Rescue Mission. At the time of the filing of the petition the mother and child were residing at the Salvation Army and would need to find another residence by June 12, 2014.

11.    . . . [O]n May 2, 2014, the Social Worker and mother met and entered a safety plan, whereby she agreed to not allow [respondent-father] to have contact with the child.

12.    As a condition of his parole [respondent-father] was not allowed to be in the presence of any child and on May 8, 2014, [he] signed a safety plan to not have any contact with [Jonah].

13.    On May 22, 2014, Raleigh Police [O]fficer Alexander Johnson observed [Jonah] sitting on the lap of [respondent-father]. [Respondent-mother] willingly allowed this contact to occur. [Respondent-father] was arrested for violating this term of his probation and he remains incarcerated for this incident. . . .

14.    That [Jonah] was neglected at the time of the filing of the petition in that he was subjected to an injurious environment, did not receive proper care and supervision and lived in a home where another juvenile was subjected to abuse and neglect by an adult who regularly lived in the

home.

The court found insufficient evidence to support an adjudication of dependency under N.C. Gen. Stat. § 7B-101(9) (2013).

## II.    Discussion

On appeal, respondent-father argues that the trial court's adjudication of neglect is not supported by the evidence at the adjudicatory hearing or by the court's findings of fact. This Court reviews an adjudication of neglect under N.C. Gen. Stat. § 7B-807 (2013) to determine whether the trial court's findings of fact are supported by "clear and convincing competent evidence" and whether the court's findings, in turn, support its conclusions of law. *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). Findings supported by competent evidence are "binding on appeal." *In re McCabe*, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003). Moreover, "erroneous findings unnecessary to the determination do not constitute reversible error" where an adjudication is supported by sufficient additional findings grounded in competent evidence. *In re T.M.*, 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006). We review a trial court's conclusions of law *de novo*. *In re J.S.L.*, 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).

As an initial matter, we agree with respondent-father that certain of the trial court's findings of fact are unsupported by competent evidence adduced at the adjudicatory hearing. Finding nine lacks evidentiary support insofar as it states that

respondent-father pled guilty to "four counts of indecent liberties in 2013." The record shows respondent-father's conviction of a single count of this offense in November 2011. Finding twelve also erroneously refers to respondent-father being on "parole" rather than probation in May 2014. We will disregard these unsupported findings for purposes of our review. *See In re T.M.*, 180 N.C. App. at 547, 638 S.E.2d at 240.

We further agree with respondent-father that no evidence supports the trial court's averment in Finding fourteen that Jonah "lived in a home where another juvenile was subjected to abuse and neglect by an adult who regularly lived in the home." *See* N.C. Gen. Stat. § 7B-101(15). While it appears that respondent-mother's older children were placed in foster care, the court received no evidence regarding the circumstances of these placements.[3] WCHS made no proffer that respondent-mother "subjected" her older children "to abuse and neglect[;]" that respondent-father "regularly live[d] in the home" with respondent-mother's older children; or that respondent-father "regularly lives in the home" with Jonah, as contemplated by N.C. Gen. Stat. § 7B-101(15).

In pertinent part, the Juvenile Code defines a "neglected juvenile" as follows:

> A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, . . . or who lives in an environment injurious to the juvenile's welfare . . . . In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home . . . where

---

[3] During her testimony, respondent-mother acknowledged a "history of Child Protective Services involvement" involving "unstable housing" and "a lack of income[.]" If WCHS was going to rely on this basis for removal of Jonah, it is incumbent that it offer further evidence.

> another juvenile has been subjected to abuse or neglect by
> an adult who regularly lives in the home.

N.C. Gen. Stat. § 7B-101(15). "[T]he decisions of this Court require there be some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide 'proper care, supervision, or discipline' in order to adjudicate a juvenile neglected." *In re McLean*, 135 N.C. App. 387, 390, 521 S.E.2d 121, 123 (1999) (citations, internal quotation marks, and emphasis in original omitted). "Whether a child is 'neglected' is a conclusion of law which must be supported by adequate findings of fact." *Id.*

The trial court's adjudicatory findings focus primarily on respondent-father's contact with Jonah on 22 May 2014, which violated both the conditions of respondent-father's probation and the safety plan developed by WCHS and signed by both parents. The findings further show that respondent-father is a convicted child sex offender, having pled guilty to taking indecent liberties with respondent-mother's eldest daughter.

In *In re J.C.B.*, the respondent-father was accused of sexually abusing his first cousin's twelve-year-old step-daughter R.R.N. during her overnight visit to the residence that respondent-father shared with his wife, their twelve-year-old son J.C.B., and their nieces C.R.R. and H.F.R. __ N.C. App. __, __, 757 S.E.2d 487, 488, *disc. review denied*, 367 N.C. 524, 762 S.E.2d 213 (2014). Absent some additional indicia that respondent-father's actions posed a threat of harm to the other children

in the home, we found his actions insufficient to support their adjudication as neglected:

> Even if we assume arguendo that respondent-father abused R.R.N., a juvenile, in the home where J.C.B., C.R.R., H.F.R., and respondent-father lived, this fact alone does not support a conclusion that J.C.B., C.R.R., and H.F.R. were neglected. . . . The trial court made virtually no findings of fact regarding J.C.B., C.R.R., or H.F.R., and wholly failed to make any finding of fact that J.C.B., C.R.R., and H.F.R. were either abused themselves or were aware of respondent-father's inappropriate relationship with R.R.N. Additionally, the trial court failed to make any findings of fact regarding other factors that would support a conclusion that the abuse would be repeated. As a result, the findings of fact do not support a conclusion that respondent-father's conduct created a substantial risk that abuse or neglect of J.C.B., C.R.R., and H.F.R. might occur.

*Id.* at __, 757 S.E.2d at 489-90 (citations and internal quotation marks omitted).

As in *In re J.C.B.*, the evidence and the trial court's findings are insufficient to show that respondent-father's single contact with Jonah on 22 May 2014 either harmed the child or created a substantial risk of such harm. The court received no evidence regarding the nature of respondent-father's prior sex offense, including the age of respondent-mother's daughter at the time of the abuse. Moreover, the court heard no evidence and made no findings tending to show that respondent-father was at risk of sexually abusing his own nineteen-month-old son. Accordingly, the findings about the bus incident do not establish neglect under N.C. Gen. Stat. 7B-101(15).

Respondent-mother's lack of stable housing likewise is insufficient to support the trial court's adjudication of neglect, absent some evidence of harm or a substantial risk of harm to Jonah. The court made no finding that Jonah was ever without shelter or that he suffered harm or a substantial risk of harm from respondent-mother's frequent moves. WCHS social worker Paula Hill acknowledged that it was the incident on the bus with respondent-father, rather than respondent-mother's housing situation, that led the department to file the petition in this cause:[4]

> Q. Is it true that the only reason that this petition was filed by your agency is because of the events that happened on the day of the bus incident?
>
> A. [That was] the initial evidence that precipitated our filing the petition, yes.
>
> Q. And so had those events not occurred, you would not have filed a petition?
>
> A. Probably not.

A lack of stable housing may certainly contribute to a juvenile's status as neglected. *E.g.*, *In re Adcock*, 69 N.C. App. 222, 226, 316 S.E.2d 347, 349 (1984) (noting, *inter alia*, "that respondents moved approximately eight times within an eighteen-month period"). Here, however, there is no evidence or finding that respondent-mother's housing instability impeded her care and supervision of Jonah or exposed the child

---

[4] Regarding the report that respondent-mother had used marijuana in Jonah's presence, Hill testified, "I never observed her to be impaired or have any signs of impairment. There was no never [sic] any reason to suspect" such drug use.

to an environment injurious to his welfare. The fact that respondent-mother had just ten more days to stay at the Salvation Army at the time WCHS filed its petition does not alter our conclusion. *See generally In re A.B.*, 179 N.C. App. 605, 609, 635 S.E.2d 11, 15 (2006) ("[P]ost-petition evidence is admissible for consideration of the child's best interest in the dispositional hearing, but not an adjudication of neglect[.]"); *see also* N.C. Gen. Stat. § 7B-802 (2013).

Our Supreme Court has characterized parental behavior constituting "neglect" as "either severe or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile." *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003). Considering as we must the totality of the evidence, *In re L.T.R.*, 181 N.C. App. 376, 384, 639 S.E.2d 122, 127 (2007), we conclude that neither the evidence nor the trial court's findings are sufficient to establish Jonah as a neglected juvenile. Accordingly, we reverse the court's adjudication.

Respondent-father also challenges the provision of the order requiring him to maintain stable housing and income, arguing that it exceeds the trial court's dispositional authority under N.C. Gen. Stat. § 7B-904(d1)(3) (2013). Having reversed the underlying adjudication, we need not address this issue.

REVERSED.

Judges BRYANT and INMAN concur.

Report per Rule 30(e).