IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-683

Filed 05 July 2023

Stokes County, No. 21JA66

IN RE: A.H.

Appeal by Respondent-Father from orders entered 20 and 24 May 2022 by Judge Thomas B. Langan in Stokes County District Court. Heard in the Court of Appeals 23 May 2023.

*Leslie Rawls for Petitioner-Appellee Stokes County Department of Social Services.*

*Mercedes O. Chut for Respondent-Appellant Father.*

*James N. Freeman, Jr., for Appellee Guardian ad Litem.*

RIGGS, Judge.

Respondent-Appellant Father M.H. appeals from adjudication and disposition orders placing his daughter, A.H. ("Aerin"),[1] in the custody of the Stokes County Department of Social Services ("DSS") on the bases of neglect and dependency. He contends, in part, that the trial court's findings are inadequate to support those adjudications because the findings concern a single incident that is insufficient to establish neglect or dependency under our child protection statutes and caselaw.

---

[1] We use a pseudonym to protect the privacy and identity of the minor child and for ease of reading. *See* N.C. R. App. P. 42(b).

After careful review, we agree with Father and reverse both the adjudication and disposition orders on these bases without reaching any remaining arguments.

## I. FACTUAL AND PROCEDURAL HISTORY

On the afternoon of 4 October 2021, Father picked up nine-year-old Aerin and her two stepsiblings from a bus stop after elementary school in King, North Carolina. Father, who was previously separated from Aerin due to incarceration, had only recently been granted temporary legal and physical custody of Aerin on 27 May 2021 through a case with Aerin's biological mother. Following the filing of the petition in this matter, Aerin's biological mother relinquished all parental rights on 15 December 2021.

Aerin and Father began arguing on their drive from the bus stop, eventually leading Aerin to leave Father's truck before they reached their destination for fear of potential corporal punishment. After Aerin exited the vehicle, Father attempted to follow Aerin in his truck but was unable to do so due to difficulty maneuvering the vehicle and its attached trailer around the area's numerous cul-de-sacs. To keep up with his daughter, Father exited his truck and pursued her on foot down Sheraton Road; Aerin saw her father following and took off towards Newsome Road, which runs near Sheraton Road. Father aborted the chase before Aerin reached Newsome Road because he had been forced to leave the other two children in the vehicle, with no adult present with them.

Bystander Jimmy Shearin was also driving home on 4 October 2021 after picking up his grandson from elementary school. Mr. Shearin was driving a van behind a dump truck down Newsome Road when he saw Father chasing after Aerin on foot down Sheraton Road. He watched Aerin run across Newsome Road and into the path of the oncoming dump truck; he also observed that Father did not follow Aerin across the road, as he had turned away and started walking back up the side street just as she started crossing the road and before she ran in front of the truck.

Mr. Shearin slowed his vehicle and began to watch Aerin to make sure she was safe, following her as she walked towards a nearby business. He then pulled into the business's parking lot and asked Aerin if she was okay. Aerin was crying and screaming and thus too upset to respond immediately. Mr. Shearin eventually calmed Aerin down and coaxed her into his vehicle, telling her that he had his grandson with him, that she would be safe in his car, and that nobody would see her due to the vehicle's tinted windows. Aerin explained to Mr. Shearin that she was fleeing from her father and was afraid that he would come get her. Mr. Shearin called law enforcement after listening to Aerin and turned her over to them once they arrived on the scene.

DSS immediately received a child protective services report in connection with the incident, and social worker Valerie Neal responded within an hour. Ms. Neal interviewed Aerin, who reported that she ran from her father after being scolded for sharing the family's personal housing information with her teacher and being

threatened with a "whoop[ing]." Ms. Neal also spoke with Aerin's stepmother, who met Ms. Neal at the parking lot. The stepmother misrepresented her husband's involvement in the day's events, telling Ms. Neal that her brother had been the man who picked up Aerin and subsequently chased her down Sheraton Road. Ms. Neal conducted a home inspection a short time later and, after an investigation totaling roughly two hours, executed a verified petition alleging abuse and neglect. DSS filed the petition the following day. Father did not contact DSS during the two-hour window between the start of the investigation and the execution of the petition, nor did he contact DSS the following morning before the petition was filed.

The trial court held an adjudication hearing on 23 February 2022. Mr. Shearin testified first, consistent with the above recitation of the facts. Ms. Neal testified next, but the trial court limited her recounting of Aerin's interview to corroborative purposes only.

Father also testified, explaining that at the time of the incident he was on parole and had a pending absconsion violation; that violation was later dismissed and he completed his parole with zero violations. He explained that he was unable to reach Aerin on foot during the chase because he was not physically fit enough, and that he had to abandon pursuit because he had two young children back in his truck. He was unequivocal in testifying that he never saw a dump truck on Newsome Road. He further testified that he eventually caught up to Aerin in his truck, stating that a crowd had gathered and that Aerin was in the custody of a woman who was hurling

racial epithets and threats at him while refusing to turn over the child. He denied seeing or encountering Mr. Shearin. He also told the trial court that he had been on the phone with his wife the entire time, and elected to leave Aerin with the woman because he did not want to get into a physical altercation, he had to meet his pregnant wife at a nearby gas station to direct her to the scene, and he believed that Aerin was at least safe with the woman and crowd for the time being. Father testified that he did not meet up with his wife in the confusion, who instead headed directly to the scene and met with Ms. Neal. Father then testified that he dropped off the two children in his truck with their aunt; within an hour, he was able to make contact with his wife who informed him Aerin was in DSS custody. Per that same testimony, Father arrived at his home in Greensboro later that evening.

Aerin's stepmother testified after her husband. She confirmed that she was not honest in her statements to Ms. Neal regarding Father's involvement in the incident and admitted to being uncooperative because she did not trust Ms. Neal. Aerin also took the stand, with her testimony mirroring the description of events testified to by Mr. Shearin.

The trial court ultimately adjudicated Aerin neglected and dependent, and adjudication and disposition orders were entered placing Aerin in DSS custody. Father timely appeals.

## II. ANALYSIS

Father presents several principal arguments on appeal, including that the findings of fact are unsupported by the evidence and/or insufficient to support the adjudications of both neglect and dependency. We agree with Father that several of the trial court's findings are unsupported or otherwise improper, and that the remaining findings do not establish neglect or dependency. We therefore reverse the trial court's adjudication order and its subsequent disposition order.

## A. Standard of Review

A trial court's adjudication order is reviewed "to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." *In re T.H.T.*, 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (citation and quotation marks omitted). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." *Id.*

## B. Neglect

Father challenges several findings as unsupported by the evidence or inadequate to support a determination of neglect. First, he contends that the findings fail to show that he knew Aerin was in danger when she ran across Newsome Road. Next, he asserts the findings that Father and his wife failed to look after Aerin after she fled from her father are likewise unsupported. He further challenges several findings concerning Father's treatment of Aerin and his post-release supervisory

status. Finally, he contends that even if all findings are supported by the evidence, they fail to establish neglect or dependence. We address each contention in turn.

### 1. *Unsupported or Erroneous Findings*

Father properly identifies Findings of Fact 33, 39 through 42, 44, and 45 as unsupported by the evidence. Finding of Fact 33 states, in relevant part, that "[Aerin] stated, Daddy thought I'd gotten run over, so he just walked back to his truck." Aerin's conjecture as to her father's state of mind is insufficient to support a proper finding of fact, and we strike this portion of Finding of Fact 33. *See In re K.L.T.*, 374 N.C. 826, 843, 845 S.E.2d 28, 41 (2020) (noting inferences in findings of fact "cannot rest on conjecture or surmise" (citation and quotation marks omitted)). Findings of Fact 39 through 42, which merely restate Ms. Neal's testimony without any apparent evaluation of its credibility, are likewise improper. *See In re A.E., J.V., E.V., A.V.*, 379 N.C. 177, 185, 864 S.E.2d 487, 495 (2021) (disregarding findings that recited testimony "without any indication that the trial court evaluated the credibility of the relevant witness or resolved any contradictions in his or her testimony"). Finally, Findings of Fact 44 and 45 misstate Father's post-release supervision status based on the uncontroverted testimony of record and are stricken to the extent that they conflict with that evidence.

### 2. *Remaining Findings Regarding Newsome Road Incident*

Assuming their competency and propriety, and acknowledging that the trial court repeatedly noted that it did not consider Father to be credible, the remaining

findings establish the trial court's determination as to Father's involvement in what

transpired on Newsome Road as follows:

> 12. Mr. Shearin, returning home from the school pickup, turned onto Newsome Road . . . . Driving on Newsome Road, his van was directly behind a dump truck.
>
> . . . .
>
> 14. As Mr. Shearin drove down Newsome Road and approached Sheraton Road on his left, he noticed a young black child in a pink shirt. She was running out of Sheraton Road, from the left, and into Newsome Road. A black man was chasing the child. She darted directly in front of the dump truck without stopping, and Mr. Shearin believed [Aerin] had been hit by the dump truck.
>
> 15. As the child began her dash in front of the dump truck, Mr. Shearin observed the black man, who had been chasing the child, stop at the side of the road, turn around, and walk back up Sheraton Road. The black man did not follow the child across the road nor remain to see if she was okay. The black man turned and walked away before the child was directly in front of the dump truck.
>
> . . . .
>
> 28. On 10/4/21, [Aerin] . . . rode the bus home, along with [her step-siblings], and was met by her father . . . . [Father] was driving a truck with a work trailer attached.
>
> . . . .
>
> 30. . . . [Father] told [Aerin] he was tired of her telling other people their business. He stated . . . he was going to whoop her.
>
> 31. Afraid of her father, [Aerin] got out of the truck and began walking away. [Father] told her to get back into the truck, but [Aerin] refused. He followed her in his truck but was unable to keep up with her, because he had to

maneuver his truck in the cul de sacs of the neighborhood.

32. . . . [Father] started chasing after her, so she began running. She ran out into Newsome Road in front of a big truck . . . .

33. . . . [Aerin] saw her father get into the truck and drive away. She never saw her father again that day.

. . . .

52. After he left the scene on Newsome Road, [Father] drove from Newsome Road . . . and went inside a 711 convenience store to get drinks for [the other two children]. He did not return to the scene of the incident.

In sum, the above findings establish that Father: (1) chased Aerin on foot because he could not keep up in his truck and trailer; (2) pursued Aerin until she reached Newsome Road, at which time he turned around to return to his truck with two other minor children; (3) could not have seen Aerin cross in front of the dump truck, as he had already turned away; and (4) proceeded to take care of the other two minor children by stopping at a convenience store without returning to Newsome Road.

As for Father's involvement in the DSS investigation, the trial court's pertinent findings, assuming their competency and propriety, are as follows:

59. No respondent was able to make a proper plan for [Aerin] on 10/5/2021. Her father . . . left and did not return to the scene.

61. . . . [Father] left the scene of the incident and did not return nor inquire about his child.

These findings thus establish only that Father did not contact DSS between the

events of Newsome Road and the filing of the petition less than 24 hours later. [2]

### 3. Conclusion of Neglect

The above findings are insufficient to support a legal conclusion of neglect. The findings as to what Mr. Shearin and Aerin observed at the scene in no way establish whether *Father* perceived a dangerous situation and was thus neglectful in failing to attend to it. In fact, consistent with all the testimony, the trial court found that Father had turned his back *as* she crossed Newsome Road and *before* she ran in front of the dump truck, and thus did not witness what transpired. Aerin's actions in darting into the road, standing alone, do not constitute neglect. *See In re Stumbo*, 357 N.C. 279, 288-89, 582 S.E.2d 255, 261 (2003) ("[A] circumstance that probably happens repeatedly across our state, where a toddler slips out of a house without the awareness of the parent or care giver . . . does not in and of itself constitute 'neglect[.]' "). No evidence or findings establish additional facts that Father saw or could have seen an oncoming dump truck or dangerous traffic on the road—or that he could have done anything at all to stop Aerin from crossing in front of it when she did so—such that his decision to turn around and tend to the other children in his care was so negligent as to be legal neglect, and no such evidence appears of record. *See In re*

---

[2] To the extent the trial court relied on findings regarding Father's failure to contact DSS *after* the filing of the petition in reaching its neglect determination, that reliance is improper. *See, e.g., In re A.B.*, 179 N.C. App. 605, 609, 635 S.E.2d 11, 15 (2006) ("[P]ost-petition evidence is admissible for consideration of the child's best interest in the dispositional hearing, but not an adjudication of neglect[.]").

*V.M.*, 273 N.C. App. 294, 300, 848 S.E.2d 530, 535 (2020) (holding a trial court's findings regarding neglect were inadequate when they only "support a determination that a tragic and unfortunate accident occurred here—an accident which might have been preventable with the benefit of hindsight, but which respondent-mother had no way of knowing would occur, nor any means to prevent it"). It is axiomatic that "[t]he absence of evidence is not evidence," *Cnty. of Durham by and through Durham DSS v. Burnette*, 262 N.C. App. 17, 23, 821 S.E.2d 840, 846 (2018), and DSS—not Father— bore the burden of positively proving additional facts showing actions amounting to neglect as alleged in the petition. The trial court similarly had the duty to find those additional facts from the evidence were it to adjudicate Aerin neglected.

It is true that, consistent with the trial court findings, there is no dispute in the record that Father did not return to Newsome Road to try and locate his daughter. However, the trial court found that he had two other small children to care for and watch after at the time. And Father's testimony explains that he: (1) left the scene for a gas station a half-mile away to look after two other children in his care; (2) tried to locate his pregnant and stressed wife so that he could direct her to Aerin; (3) believed that Aerin was safe in the nearby parking lot with the crowd of people; and (4) in less than two hours, learned from his wife that his daughter was safely in the custody of DSS. While the trial court was free to reject Father's testimony as

incredible,[3] the remaining findings—Findings of Fact 59 and 61—simply state that he did not return to Newsome Road; that fact, standing alone, does not establish that his decision to tend to the other two minors in his care amounted to neglect under the law. *See Stumbo*, 357 N.C. at 283, 582 S.E.2d at 258; *V.M.*, 273 N.C. App. at 300, 848 S.E.2d at 535. Indeed, the uncontroverted evidence and findings show that Aerin was safely in the care of Mr. Shearin, law enforcement, and later DSS within minutes of the event.[4] The findings do not set forth facts demonstrating that his failure to return to the scene, standing alone, was so negligent as to amount to neglect.[5]

Father's lack of contact with DSS in the less-than-24-hour period between the incident at Newsome Road and DSS's filing of its petition does not bridge this gap. There was no evidence introduced showing that he ever had an opportunity to contact

---

[3] That Father left to try and meet his wife and later learned Aerin was safe within two hours of the event does not appear in the trial court's findings of fact. What findings were made appear to credit Father's testimony at points and discredit them at others, all without consistently identifying which specific portions of Father's testimonial statements were considered credible. Indeed, Finding of Fact 54's blanket finding, stating only that "[t]he Court does not find [Father] to be credible," suggests that *all* of his testimony was not deemed credible despite the trial court's plain reliance on portions thereof for several of its findings. While a trial court can deem some aspects of a witness's testimony credible and some not, the trial court's findings referencing and recounting a witness's testimony must nonetheless "include[] an indication concerning whether the trial court deemed the relevant *portion* of the testimony credible." *In re H.B.*, ___ N.C. ___, 886 S.E.2d 106, 111 (2023) (citation and quotation marks omitted) (emphasis added).

[4] The trial court's order states that its determination of neglect rested, in no small part, on "[Father's] willful conduct of turning away and leaving [Aerin] on the busy roadway." But, "when determining whether a child is neglected, the circumstances and conditions surrounding the child are what matters, *not the fault or culpability of the parent*." *In re Z.K.*, 375 N.C. 370, 373, 847 S.E.2d 746, 748-49 (2020) (emphasis added).

[5] For example, the trial court might have found from the evidence that Father decided to leave Aerin at Newsome Road not out of concern for the other children in his care, but because he was afraid of being arrested on the outstanding absconsion violation. Pointedly, the trial court made no such finding.

DSS or was informed of Ms. Neal's contact information. What evidence was introduced shows that Ms. Neal received a report at 3:15 p.m., arrived at Newsome Road around 4:00 p.m., began her home inspection between 5:30 and 5:45 p.m., executed her verified petition before a magistrate later that evening, and filed the petition the following day. Again, "the absence of evidence is not evidence," *Cnty. of Durham*, 262 N.C. App. at 23, 821 S.E.2d at 846, and DSS failed to meet its burden of introducing evidence proving Father's failure to contact DSS after business hours on the 4th and on the morning of the 5th before the filing of the petition amounted to neglect, particularly when the only evidence that was introduced—credible or not—shows Father knew that his wife had already met with DSS and that Aerin was safe in DSS custody.

## C. Dependency

To adjudicate a minor dependent, a trial court must "address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005). Findings as to both prongs are required. *Id.*

At a minimum, DSS failed to introduce evidence of—and the trial court thus failed to make adequate findings concerning—the second prong. While it is true that Father did not contact or provide DSS with any alternative arrangements, this cannot meet *DSS's burden* of showing no such arrangements exist. *In re K.C.T.*, 375 N.C. 592, 596-97, 850 S.E.2d 330, 334 (2020). That Father's wife did not immediately offer

to take custody of Aerin or share Father's contact information with DSS, or that he was not immediately available within 24 hours to DSS, is not evidence that no alternative childcare arrangements were available to Father, and those facts cannot relieve DSS of its evidentiary burden. *See P.M.*, 169 N.C. App. at 428, 610 S.E.2d at 406 (reversing a conclusion of dependency because a finding that "the juvenile is dependent based on the fact that he does not have a parent who is capable of properly caring for him in that his father is incarcerated and his mother does not comply with court ordered protection plans set out for the protection of the juvenile" failed to adequately address the second dependency prong).

## III.   CONCLUSION

For the foregoing reasons, we hold that numerous findings of fact in the trial court's adjudication order are unsupported or improper, and the remaining findings fail to establish neglect or dependency. We therefore reverse the trial court's adjudication order and the disposition order based thereon.

REVERSED.

Judge HAMPSON concurs.

Judge FLOOD dissents by separate opinion.

No. COA22-683 – *In re A.H.*

FLOOD, Judge, dissenting.

Despite the majority's and Respondent-Father's narrow framing of the issue, our task is not to address whether the "single isolated incident" of Aerin running across the road alone can support neglect; rather, the issue is whether, under the totality of the evidence—including Respondent-Father's inaction *after* Aerin ran across the road—the trial court made sufficient findings of fact to support the ultimate conclusion of neglect. I conclude it did, and therefore would hold the trial court did not err. I respectfully dissent.

## I. <u>Adjudicating Neglect</u>

Respondent-Father presents several arguments on appeal, including that the findings of fact are not supported by clear and convincing competent evidence. The majority does not address the challenged findings, concluding that even if the findings are supported, they do not establish neglect or dependency.

Our standard of review instructs that "[t]he role of this Court in reviewing a trial court's adjudication of neglect . . . is to determine (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact[.]" *In re V.M.*, 273 N.C. App. 294, 296, 848 S.E.2d 530, 533 (2020) (citation and internal quotation marks omitted). "[T]he trial court's findings of fact supported by clear and convincing competent evidence are deemed

conclusive, even where some evidence supports contrary findings." *In re R.B.*, 280 N.C. App. 424, 430, 868 S.E.2d 119, 124 (2021) (citation omitted). "Clear and convincing evidence is an intermediate standard of proof, greater than the preponderance of the evidence standard applied in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in most criminal cases." *In re J.L.*, 264 N.C. App. 408, 419, 826 S.E.2d 258, 266 (2019) (internal citations and quotation marks omitted). "Findings supported by competent evidence are 'binding on appeal.'" *In re J.R.*, 243 N.C. App. 309, 312, 778 S.E.2d 441, 443 (2015) (citation omitted).

## A. Findings of Fact Supported by Competent Evidence

First, I agree with the majority that Findings of Fact 33, 39 through 42, 44, and 45 are unsupported by the evidence, and therefore, I do not consider them in this analysis. As for the remaining findings, a robust review shows the challenged findings are supported by competent evidence that is clear and convincing.

1. <u>Findings that Respondent-Father Left Aerin in a Dangerous Situation</u>

Respondent-Father contends the findings that he left Aerin in a dangerous situation stem from subjective opinion and speculation and have no evidentiary support. I disagree.

*a. Findings of Fact 14, 15, and 16*

Respondent-Father argues Findings of Fact 14, 15, and 16 may support Mr. Shearin's belief, but they do not support findings regarding what Respondent-Father

saw, thought, or intended.

Findings of Fact 14, 15, and 16 state:

> 14. As Mr. Shearin drove down Newsome [R]oad and approached Sheraton Road on his left, he noticed a young [] child in a pink shirt. She was running out of Sheraton Road, from the left, and into Newsome Road. [Respondent-Father] was chasing the child. She darted directly in front of the dump truck without stopping, and Mr. Shearin believed she had been hit by the dump truck.
>
> 15. As the child began her dash in front of the dump truck, Mr. Shearin observed [Respondent-Father], who had been chasing the child, stop at the side of the road, turn around, and walk back up Sheraton Road. [Respondent-Father] did not follow the child across the road nor remain to see if she was okay. [Respondent-Father] turned and walked away before the child was directly in front of the dump truck.
>
> 16. As soon as the dump truck moved forward and turned left, out of the way, Mr. Shearin slowly drove down Newsome Road, looking for the little girl, believing she had been hit. When he didn't see her, he believed she was under the dump truck.

Although trial court is required to make findings of fact that are supported by clear and convincing evidence and in turn support the legal conclusions, *see In re V.M.*, 273 N.C. App. at 296, 848 S.E.2d at 533, the trial court here is not required to make findings that support what Respondent-Father perceived. Contrary to the majority's conclusion that the findings establish Respondent-Father "could not have seen Aerin cross in front of the dump truck, as he had already turned away," the uncontroverted evidence shows he was watching Aerin as she ran into the road. Moreover—whether Respondent-Father actually saw Aerin cross in front of the dump

truck or not—I cannot reconcile the fact that Respondent-Father watched his nine-year-old child run into a busy road and walked away from her with the conclusion that it was not a dangerous situation.

Mr. Shearin testified that he was driving behind a dump truck on Newsome Road when he saw "a young girl in a pink shirt" run into the road, in front of the dump truck. He further testified that the girl was being chased by a man. When asked about Respondent-Father's reaction to Aerin running onto the road, Mr. Shearin stated, "he just turned around and walked back the other way."

Similarly, Aerin testified that she did not see the dump truck on the road because she "was too busy looking at [her] dad." When asked if she was looking back at Respondent-Father as she ran across Newsome Road, she answered in the affirmative. The trial court found the testimonies of both Mr. Shearin and Aerin to be credible. Thus, Mr. Shearin's testimony is correctly summarized in Findings of Fact 14, 15, and 16.

Findings of Fact 14, 15, and 16, therefore, are supported by competent evidence. *See In re J.R.*, 243 N.C. App. at 312, 778 S.E.2d at 443.

b. *Finding of Fact 32*

Respondent-Father contends Finding of Fact 32 is an insufficient finding of fact because it merely describes Aerin's testimony.

Finding of Fact 32 states:

> 32. According to [Aerin], [Respondent-Father] followed her

> to the corner of Sheraton Road, got out of his truck, and ordered [Aerin] into the vehicle. Then, he started chasing after her, so she began running. She ran into Newsome Road in front of a big truck, which she said honked at her. She recalled she was looking behind her at her daddy, as she ran from him, and when she got out into the road, she heard the dump truck honk at her.

Our Supreme Court has held "'[r]ecitations of the testimony of each witness *do not* constitute *findings of fact* by the trial judge' absent an indication concerning 'whether [the trial court] deemed the relevant portion of [the] testimony credible.'" *In re A.E.*, 379 N.C. 177, 185, 864 S.E.2d 487, 495 (2021) (alterations in original) (emphasis in original) (citation omitted).

Here, in Finding of Fact 38, which is discussed in greater detail below, the trial court found Aerin's testimony to be credible. This finding of credibility is sufficient to transform Aerin's testimony reflected in Finding of Fact 32 into a finding of fact. *See In re A.E.*, 379 N.C. at 185, 864 S.E.2d at 495. As Finding of Fact 32 is supported by Aerin's testimony, it is therefore, supported by competent evidence. *See In re J.R.*, 243 N.C. App. at 312, 778 S.E.2d at 443.

### 2. Findings as to Failure to Check on Aerin

Respondent-Father challenges the findings that neither he nor Ms. Harris attempted to check on Aerin after she ran across the road as "erroneous and speculative."

*a. Findings of Fact 51 and 61*

Respondent-Father argues Finding of Fact 51 and portions of Finding of Fact

61 that state he did not attempt to inquire about his child are unsupported because the trial court heard no evidence Respondent-Father had an opportunity to speak with DSS before it filed the petition.

Finding of Fact 51 states: "[Respondent-Father] noted he never called [Ms.] Neal about the events of [4 October 2021]." Similarly, the challenged portion of Finding of Fact 61 provides: "[Respondent-Father] left the scene of the incident and did not return nor inquire about his child. . . . " First, Finding of Fact 51 does not state Respondent-Father failed to contact Ms. Neal prior to her filing the petition; rather, it states Respondent-Father *never* called Ms. Neal about the events of 4 October 2021. Respondent-Father's own testimony supports this finding. Respondent-Father testified that he never spoke with Ms. Neal, and Ms. Neal likewise testified that she never spoke with Respondent-Father.

Finding of Fact 51 is, therefore, supported by competent evidence. *See In re J.R.*, 243 N.C. App. at 312, 778 S.E.2d at 443.

As for the challenged portion of Finding of Fact 61, Respondent-Father never returned to the scene or inquired about Aerin. Respondent-Father testified that after he left Aerin on Newsome Road, he drove to a 7-Eleven convenience store. From the 7-Eleven, Respondent-Father dropped his two step-children off with Ms. Harris's sister and then drove to Greensboro, North Carolina.

The challenged portion of Finding of Fact 61 is, therefore, supported by competent evidence. *See In re J.R.*, 243 N.C. App. at 312, 778 S.E.2d at 443.

*b. Findings of Fact 50, 55 and 61*

Respondent-Father argues portions of Findings of Fact 50, 55, and 61 are unsupported by the evidence because the trial court did not hear evidence that Ms. Harris had the opportunity to pack clothes for Aerin or turn over her book bag before DSS filed the petition.

Findings of Fact 50, 55, and 61 state, in pertinent part:

> 50. . . . . [Aerin] had no clothes beyond those she was wearing and needed clothing to wear to school the next day.
>
> . . . .
>
> 55. . . . . Ms. Neal asked [Ms.] Harris to provide [Aerin] with clothes for one night and her bookbag for school the next day. [Ms.] Harris said she had nothing that belonged to [Aerin]. [Ms.] Harris said a friend had [Aerin's] book bag but would not give [Ms. Neal] the name of the friend nor any contact information.
>
> . . . .
>
> 61. . . . . [Ms.] Harris made no effort to provide the child's clothes or her book bag, which was last observed to be in [Respondent-Father's] truck.

Aerin testified that after she was taken into DSS custody, they had to take her to get clothes before she could go to her first foster parent. Aerin had to go to the clothing pantry because the only clothes she had were the clothes she was wearing on 4 October 2021. Ms. Neal also testified that she took Aerin to get clothes at the DSS clothing closet because Ms. Harris would not provide clothes for Aerin.

The challenged portion of Finding of Fact 50 is, therefore, supported by

competent evidence. *See In re J.R.*, 243 N.C. App. at 312, 778 S.E.2d at 443.

Findings of Fact 55 and 61 are likewise supported by competent evidence. Ms. Neal testified that she asked Ms. Harris if she could have clothes for Aerin and her book bag for school the following day. Ms. Harris told Ms. Neal none of Aerin's belongings were in the home, and there was nothing Ms. Harris could provide for Aerin. When Ms. Neal asked whether Aerin had a book bag for school, Ms. Harris would not tell Ms. Neal where it was. No evidence in the Record indicates that Ms. Harris offered to bring Aerin her clothes or her book bag once she could retrieve them from wherever they were or attempted to assist in any way.

Findings of Fact 55 and 61 are, therefore, supported by competent evidence. *See In re J.R.*, 243 N.C. App. at 312, 778 S.E.2d at 443.

*c. Findings of Fact 52, 59, and 61*

Respondent-Father argues Finding of Fact 52 and portions of Findings of Fact 59 and 61 that state he never returned to the scene of the incident are "misleading" because the trial court did not hear evidence that Respondent-Father could have returned to the scene and taken Aerin home after she crossed Newsome Road.

As Respondent-Father's arguments take issue with what the trial court did *not* find, and the inferences that stem from the findings the trial court did make, I reiterate our standard of review here: the findings of fact must be supported by "clear and convincing competent evidence." *In re R.B.*, 280 N.C. App. at 430, 868 S.E.2d at 124 (citation omitted). Findings of fact that are supported by such evidence are

deemed conclusive, even where some evidence supports contrary findings. *See id.* at

430, 868 S.E.2d at 124.

Findings of Fact 52, 59, and 61 state:

> 52. After he left the scene on Newsome Road, [Respondent-Father] drove from Newsome Road to Main Street, King, and went inside a 7/11 convenience store to get drinks for [the other minor children.] He did not return to the scene of the incident.
> . . . .
>
> 59. . . . . [Respondent-Father] left and did not return to the scene. . . . .
>
> . . . .
>
> 61. . . . . [Respondent-Father] left the scene of the incident and did not return no inquire about his child. . . .

As previously determined, Respondent-Father did not return to the Belmont Place

Drive residence; he instead left King and drove to Greensboro.

Findings of Fact 52, 59, and 61 are, therefore, supported by competent

evidence. *See In re J.R.*, 243 N.C. App. at 312, 778 S.E.2d at 443.

*d. Findings of Fact 59, 60, and 61*

Respondent-Father argues Findings of Fact 59 through 61 are actually

conclusions of law.

"The labels 'findings of fact' and 'conclusions of law' employed by the lower

tribunal in a written order do not determine the nature of our standard of review."

*In re Estate of Sharpe*, 258 N.C. App. 601, 605, 814 S.E.2d 595, 598 (2018). When a

trial court "labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' as a conclusion *de novo*." *Id.* at 605, 814 S.E.2d at 598. "[A]ny determination requiring the exercise of judgment, or the application of legal principles, is more properly classified as a conclusion of law. Any determination reached through 'logical reasoning from the evidentiary facts' is more properly classified a finding of fact." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (cleaned up).

Findings of Fact 59, 60, and 61 state:

> 59. No respondent [sic] was able to make a proper plan for [Aerin] on [4 October 2021]. Her father, [Respondent-Father] left and did not return to the scene. [Ms.] Harris did not offer to make a plan for the child, [sic] during her interview with [Ms.] Neal. Finally, [] the child's mother[] was unable to be located on [4 October 2021].
>
> 60. [Respondent-Father] threatened to physically punish [Aerin], who was afraid of her father. [Aerin's] emotional response to the events of [4 October 2021], including crying, screaming, and initially being [in]consolable, support the grave impact the events had on [Aerin].
>
> 61. Neither [Ms.] Harris nor [Respondent-Father] was suitable to provide care and supervision of [Aerin] on [4 October 2021]. [Respondent-Father] left the scene of the incident and did not return no inquire about his child. [Ms.] Harris called [Aerin] a "pathological liar" and did not inquire about her safety and wellbeing after the incident. [Ms.] Harris made no effort to provide the child's clothes or her book bag, which was last observed to be in [Respondent-Father's] truck.

Findings of Fact 59, 60, and 61 do not include an exercise of judgment or

application of legal principles, but instead were reached through logical reasoning from the evidence presented to the trial court and are appropriately categorized as findings of fact. *See In re Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675. As such, this Court must determine whether the challenged findings are supported by competent evidence. *See In re J.R.*, 243 N.C. App. at 312, 778 S.E.2d at 443. Having already concluded Findings of Fact 59 and 61 are supported by competent evidence, I turn to Finding of Fact 60.

Respondent-Father argues Aerin did not suffer actual injury nor was she at risk of injury from corporal punishment, and "grave impact" does not convey potential injury as required to support an adjudication of neglect. This argument invites an incorrect inquiry. Finding of Fact 60 does not need to show Aerin suffered actual injury; rather, it needs to be supported by competent evidence, which it is. Aerin testified that she was afraid of her father. Mr. Shearin and Ms. Neal also testified that Aerin expressed extreme fear of her father. Ms. Neal included in her initial report that Aerin was afraid of Respondent-Father. Moreover, Mr. Shearin testified that Aerin was "screaming, crying, you know, just hysterical . . . she couldn't even talk." Based on this testimony, the trial court made a reasonable inference that the events of the day had a serious impact on Aerin. *See In re K.L.T.*, 374 N.C. 826, 843, 845 S.E.2d 28, 41 (2020) (holding the trial court is permitted to make reasonable inferences based on the weight it assigns particular evidence).

Finding of Fact 60 is, therefore, supported by competent evidence. *See In re J.R.*, 243 N.C. App. at 312, 778 S.E.2d at 443.

The above referenced challenged findings of fact are supported by competent evidence that is clear and convincing. *See In re V.M.*, 273 N.C. App. at 296, 848 S.E.2d at 533. Based on a comprehensive review of these findings, I conclude the findings establish Respondent-Father (1) knew Aerin ran into a busy roadway, (2) left Aerin on the side of the road, and (3) never made any attempts to check on Aerin's well-being by either returning to Newsome Road or contacting DSS.

### 3. Trial Court's Fact-Finding Obligation

Respondent-Father argues the trial court did not fulfill its fact-finding obligation by determining Respondent-Father's testimony was not credible. This argument is unsupported by our case law.

"It is the province of the trial court when sitting as the fact-finder to assign weight to particular evidence and to draw reasonable inferences therefrom." *In re K.L.T.*, 374 N.C. at 843, 845 S.E.2d at 41. It is not this Court's role to review "[e]videntiary issues concerning credibility, contradictions, and discrepancies," as these are for the trial court to resolve. *Sergeef v. Sergeef*, 250 N.C. App. 404, 406, 792 S.E.2d 192, 193 (2016). Moreover, the trial court is not required to explain its reasoning so long as it makes a finding of credibility. *See Matter of H.B.*, __ N.C. __, 886, S.E.2d 106, 111 (2023) (concluding the trial court fulfilled its duty to evaluate the evidence by finding " . . . the said report to [be] both credible and reliable."); *see*

- 12 -

*also In re A.E.*, 379 N.C. at 185, 864 S.E.2d at 495.

In Findings of Fact 49 and 52, the trial court determined Respondent-Father's testimony was not credible. The trial court fulfilled its obligation to make a finding of credibility, and it is not our role to review these findings. *See Sergeef*, 250 N.C. App. at 406, 792 S.E.2d at 193.

Having concluded the findings of fact are supported by clear and convincing competent evidence and that the trial court fulfilled its fact finding obligation, I now turn to whether the findings of fact support the conclusions of neglect. *See In re V.M.*, 273 N.C. App. at 296, 848 S.E.2d at 533.

### B. Conclusions of Neglect

Bound by our well-established standard of review, I conclude the above findings are sufficient to support a legal conclusion of neglect.

A neglected juvenile is one whose parent "does not provide proper care, supervision or discipline" or "creates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15) (2021). "In general, treatment of a child which falls below the normative standards imposed upon parents by our society is considered neglectful. However, not every act of negligence on part of the parent results in a neglected juvenile." *In re V.M.*, 273 N.C. App. at 297, 848 S.E.2d at 533 (citations omitted). "In order to constitute actionable neglect, the conditions at issue must result in '*some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment.*'" *In re K.L.T.*, 374 N.C. at

831, 845 S.E.2d at 34 (emphasis added) (citation omitted). Neglect has most often been found when the "conduct at issue constituted either severe or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile." *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003). "This Court is required to consider the totality of the evidence to determine whether the trial court's findings sufficiently support its ultimate conclusion that [Aerin] is a neglected juvenile." *In re F.S.*, 268 N.C. App. 34, 43, 835 S.E.2d 465, 471 (2019).

To further the position that one single act of negligent parenting is insufficient to support a showing of neglect, Respondent-Father and the majority cite to *In re Stumbo*, 357 N.C. 279, 582 S.E.2d 255 and *In re H.P.*, 278 N.C. App. 195, 862 S.E.2d 858 (2021). Relying on these cases to support the contention that one single act of neglect is insufficient to support an adjudication of neglect is misplaced.

In *In re Stumbo*, DSS began an investigation after receiving an anonymous call about an unsupervised two-year-old playing naked in the driveway of a house. 357 N.C. at 280, 582 S.E.2d at 256. The issue in that case was whether the single incident of the unsupervised two-year-old was sufficient to constitute neglect. *Id.* at 287, 582 S.E.2d at 260. Our Supreme Court concluded the evidence in the record did not constitute a report of "neglect" because it was factually incomplete. *Id.* at 285, 582 S.E.2d at 259. The record lacked any information regarding the contents of the anonymous phone call, the length of time the child was outside unsupervised, the character of the surrounding area, or whether this incident had happened before. *Id.*

at 282, 585 S.E.2d at 258. Contrary to what the majority and Respondent-Father appear to argue—that a single incident is insufficient for a finding of neglect—*In re Stumbo* did not hold as an absolute that an isolated incident of neglect could *never* support an adjudication of neglect. Moreover, unlike the situation in *In re Stumbo*, the case before us does not involve an incident of a "toddler slip[ing] out of a house without the *awareness* of the parent or care giver—no matter how conscientious or diligent the parent or care giver might be." *See id.* at 288, 582 S.E.2d at 261. Here, Respondent-Father was fully aware he left his nine-year-old child on the side of the road with strangers.

In *In re H.P.*, a social worker observed a naked three-year-old running barefoot in the snow. 78 N.C. App. at 199, 862 S.E.2d at 863. Just days later, DSS received another report that the three-year-old was walking down the street alone in the rain. *Id.* at 199, 862 S.E.2d at 864. Subsequently, DSS filed petitions alleging the three-year old, as well as respondent-mother's other children, were neglected and dependent. *Id.* at 200, 862 S.E.2d at 864. At the adjudication hearing, DSS relied on "Exhibit A," which was a summary of DSS's history with the family, including all the reports DSS received over a span of four years. *Id.* at 200, S.E.2d at 864. The trial court then relied solely on Exhibit A in making its forty-seven findings of fact. *Id.* at 202, 862 S.E.2d at 866. No other evidence was presented at the hearing, none of the individuals who made the reports testified at the hearing, respondent-parents did not testify, DSS's testimony largely consisted of reading from Exhibit A, and this Court

concluded Exhibit A was "contradictory on its face." *Id.* at 203–04, 862 S.E.2d at 866–67. This Court noted the only two uncontested substantive findings made by the trial court—the toddler running naked in the snow and walking alone in the street—were insufficient to constitute neglect. *Id.* at 208, 862 S.E.2d at 869. Specifically, these instances could not constitute neglect because the trial court did not make any findings that the children "experienced, or were at risk of experiencing, physical, mental, or emotional harm," and the conclusions of neglect were therefore unsupported by the findings of fact. *Id.* at 208, 862 S.E.2d at 869.

*In re V.M.* is likewise instructive for the case at bar. In *In re V.M.*, the trial court adjudicated an infant neglected based on a single incident where he was fed a bottle that had been unknowingly mixed with alcohol instead of water. 273 N.C. App. at 295, 848 S.E.2d at 532. This Court reversed the trial court's order, holding "[t]he trial court did not find that respondent-mother knew, or even reasonably could have discovered, the danger of alcohol in the bottles. The trial court did not find the respondent-mother's behavior fell 'below the normative standards imposed upon parents by our society.'" *Id.* at 299, 848 S.E.2d at 535. This Court found the trial court's "most glar[ing]" omission to be that the infant suffered "some physical, mental, or emotional impairment," or was at a substantial risk of such impairment. *Id.* at 300, 848 S.E.2d at 535. This Court did *not* hold, however, that the trial court could *not* have concluded the infant was neglected, explicitly stating:

> Had the court engaged in more detailed analysis, offered

> additional factual findings, explained what steps respondent-mother would or should have taken, determined that the danger was in some way foreseeable, or even just offered more than a token conclusion, we might be able to uphold such a determination. But the analysis in this case was cursory and conclusory, at best.

*Id.* at 300, 848 S.E.2d at 535.

These cases consistently demonstrate this Court's conclusion that insufficient findings cannot support conclusions of neglect. These cases do not indicate, however, that one act of parental negligence—such as the issue before us has been framed—can *never* support a conclusion of neglect. Rather, the inquiry into whether the trial court erred in adjudicating a juvenile as neglected is extremely fact-intensive.

I reiterate my view that the issue before us is not whether a single, isolated incident alone can support neglect. This Court must consider whether, under the totality of the evidence of this particular case, the trial court made sufficient findings of fact to support the ultimate conclusion of neglect. *See In re F.S.*, 268 N.C. App. at 43, 835 S.E.2d at 471.

At the outset, I agree with Respondent-Father that Findings of Fact 57 and 58 are more properly categorized as conclusions of law because they contain applications of legal principles. *See In re Helms*, 127 N.C. App. at 510, 491 S.E.2d at 675–76 ("The determination of neglect requires the application of the legal principles put forth in N.C. Gen. Stat. [§ 7B-101(15)] and is therefore a conclusion of law."). As such, they will be reviewed *de novo*. *See In re Estate of Sharpe*, 258 N.C. App. at 605, 814 S.E.2d

at 598.

The challenged findings state:

> 57. There was a substantial risk to [Aerin] of serious physical injury, when the father turned around, walked away, and left [Aerin] on a busy roadway on [4 October 2021]. [Respondent-Father] did not provide proper care of his child, when he left her running into a busy roadway of [sic] Newsome Road.
>
> 58. Based on a [sic] totality of the circumstances, including [Respondent-Father]'s willful conduct of turning away and leaving [Aerin] on the busy roadway, [Aerin] was in an environment injurious and did not receive proper care and supervision.

Respondent-Father argues Findings of Fact 57 and 58 do not support the conclusion that he "willfully or negligently" abandoned Aerin on Newsome Road. Further, he argues "all witnesses agreed" Respondent-Father was following Aerin to get her back in the truck and "off the road," and there is no evidence he could have prevented Aerin from crossing the road. This argument is factually inaccurate and misplaced.

Respondent-Father's argument is factually inaccurate because the witnesses do *not* agree Respondent-Father was following Aerin to get her back in his truck and off the road. All witnesses agreed Respondent-Father was following Aerin *until* she ran across Newsome Road. As Aerin was crossing the road, Respondent-Father turned around, got back in his truck, drove away, and did not return that day.

Respondent-Father's argument is misplaced because it focuses on the sole fact

of Aerin crossing the road. Respondent-Father is likely correct that he could not have prevented Aerin from crossing the road: it was an unfortunate series of events that led to Aerin running from her father and into potentially grave danger. What Respondent-Father and the majority do not appear to consider—and what I find most troubling—are his actions *after* Aerin crossed the road. Respondent-Father did not stay to see if Aerin made it safely to the other aside, he did not stay on the roadside with her, and there is no evidence he inquired about her during the rest of the day. Even assuming Respondent-Father did not see the dump truck, his nine-year-old, hysterical daughter had just run into a busy roadway during school pickup traffic. The majority also seems to give credence to Respondent-Father's claim that he believed Aerin was safe with a crowd of people. Not only was this "crowd of people" never corroborated by any other witnesses, but the trial court also determined Respondent-Father's testimony was not credible. It is also difficult to see how leaving a child with strangers on the side of the road is akin to "safety."

Respondent-Father's actions on 4 October 2021 constituted neglect because leaving Aerin on the side of the road, with no regard for her well-being, constituted "severe or dangerous conduct" which could have potentially resulted in injury to Aerin. *See In re Stumbo*, 357 N.C. at 283, 582 S.E.2d at 258. Moreover, there is no evidence in the record Respondent-Father attempted to call anyone in DSS on 4 October 2021 to inquire about his daughter, even though he testified that he knew she was in DSS custody.

Respondent-Father compares this incident to those in *In re Stumbo* and *In re H.P.*, where the juveniles also faced traffic risks, but he argues his nine-year-old daughter knew not to "play in traffic." Respondent-Father further argues Aerin was unharmed, and the fact that she arrived safely on the other side of the road weighs against any conclusion that she could not safely navigate busy roads. Based on the testimony of Mr. Shearin, however, it appears Aerin "safely" crossed the road by a stroke of sheer luck. Aerin testified she was not even looking at the road as she ran into it, which is clear evidence she did not safely navigate the road.

Further distinguishing this case from *In re Stumbo* and *In re H.P.*, the trial court here made sixty-four detailed findings of fact based on corroborated testimony of Aerin, Mr. Shearin, and Ms. Neal, which can hardly be considered "factually incomplete." *See In re Stumbo*, 357 N.C. at 285, 582 S.E.2d at 259. The trial court in this case conducted a detailed analysis of the events that transpired on 4 October 2021 and the impact the events had on Aerin. *See id.* at 300, 848 S.E.2d at 535. Moreover, the trial court's conclusions included the most important element of a neglect case—that Aerin was "at a substantial risk of serious harm." *See id.* at 299, 848 S.E.2d at 534; *see also In re H.P.*, 278 N.C. App. at 208, 862 S.E.2d at 869; *In re K.L.T.*, 374 N.C. at 831, 845 S.E.2d at 34. This conclusion is supported by very detailed factual findings supporting more than a "token conclusion." *See In re V.M.*, 273 N.C. App. at 300, 848 S.E.2d at 535.

While I am cognizant of Respondent-Father's difficult situation—having two

other young children with him in the truck—this incident occurred just blocks from the Belmont residence. Even if Respondent-Father could not have responsibly taken the other two children home and returned to check on Aerin, he could have returned to Newsome Road after he dropped his step-children off at their aunt's home. Instead, he left town. Respondent-Father's willful acts of walking away from Aerin as she reached Newsome Road, leaving Aerin with strangers, and never inquiring about her well-being was treatment of Aerin that fell "below the normative standards imposed upon parents by our society." *See In re V.M.*, 273 N.C. App. at 297, 848 S.E.2d at 533.

Based on the totality of the evidence and the findings of fact, I would hold the trial court did not err by concluding Aerin was neglected when Respondent-Father left her in an "environment injurious to her welfare" and that she was "at risk of physical, mental, and emotional impairment." *See In re K.L.T.*, 374 N.C. at 831, 845 S.E.2d at 34; *see also In re F.S.*, 268 N.C. App. at 43, 835 S.E.2d at 471.

## II. Adjudicating Dependency

I further disagree with the majority that the trial court erred in adjudicating dependency. As the majority noted, the trial court is required to address the parent's ability to provide care and alternative childcare arrangements. *See In re P.M.*, 169 N.C. App. at 427, 610 S.E.2d at 406. Because I conclude the trial court fulfilled this duty, I would affirm the conclusion of dependency.

The trial court's findings of Fact 59 and 62 addressed Respondent-Father's

ability to provide care, supervision, and the availability of alternative childcare arrangements. Respondent-Father, however, challenges Findings of Fact 59 and 62 arguing there is no evidence to support the findings that he or Ms. Harris were unwilling to create a care plan for Aerin, DSS did not attempt to work with Respondent-Father "in the two hours before it decided to file a petition[,]" and DSS did not ask them to suggest appropriate childcare arrangements. This argument is unpersuasive.

Findings of Fact 59 and 62 state:

> 59. No respondent [sic] was able to make a proper plan for [Aerin] on [4 October 2021]. Her father, [Respondent-Father] left and did not return to the scene. [Ms.] Harris did not offer to make a plan for the child, [sic] during her interview with [Ms.] Neal. Finally, [] the child's mother[] was unable to be located on [4 October 2021].
> . . . .
>
> 62. At the time of the filing of the petition, [Aerin] needed placement and assistance because no parent or custodian was able and willing to provide for [her] care.

DSS could not have attempted to work with Respondent-Father because he left the scene, did not return to check on Aerin, and did not go to the Belmont residence. Respondent-Father made no attempts to contact DSS or inquire about Aerin even after he knew she was in DSS custody. Moreover, Ms. Harris testified that she did not cooperate with Ms. Neal. It was clear from Ms. Harris's lack of cooperation with Ms. Neal that she was not willing to assist in finding an alternative childcare arrangement for Aerin. It is also clear DSS could not have asked Respondent-Father

to assist in finding placement for Aerin because Respondent-Father left town; Ms. Harris represented to DSS that she did not have contact information for him and did not know his whereabouts.

Findings of Fact 59 and 62 are supported by clear and convincing evidence, and thus I would hold the trial court did not err in adjudicating Aerin dependent. *See In re R.B.*, 280 N.C. App. at 437, 868 S.E.2d at 128; *see also In re V.M.*, 273 N.C. App. at 296, 848 S.E.2d at 533.

## III. <u>Conclusion</u>

Based on the above, I would hold the trial court did not err in adjudicating Aerin as neglected and dependent. For the foregoing reasons, I respectfully dissent.