TYSON, Judge.
 

 *602
 

 I. Background
 

 Thomas S. Sharpe and Alma G. Seward were married on 21 November 2009, and remained married until Thomas S. Sharpe's death on 14 January 2016. Thomas S. Sharpe was 86 years old and Alma G. Seward was 75 years old when they were married. Both had been married previously and had adult children from their prior marriages.
 

 On 18 February 2016, a will for Thomas S. Sharpe ("testator") was entered into probate
 
 *597
 
 by his son, Thomas F. Sharpe. Attached to the will was a pre-marital agreement and a document entitled the "Thomas S. Sharpe Irrevocable Trust Agreement."
 

 The testator's will designates Thomas S. Sharpe's two adult children from a previous marriage, Susan Wall and Thomas F. Sharpe, as co-executors. The will bequeaths all of the testator's estate to the "Thomas S. Sharpe Irrevocable Trust Agreement." The two beneficiaries of the trust are Thomas F. Sharpe and Susan Wall. The will leaves nothing to the testator's wife at his death.
 

 The pre-marital agreement was executed between Thomas S. Sharpe and Alma G. Seward on 4 November 2009. The pre-marital agreement has two schedules attached, Schedule A and Schedule B. Schedule A lists all the separate property belonging to Thomas S. Sharpe and Schedule B lists all the separate property belonging to Alma G. Seward. The pre-marital agreement states that "each party agrees that the separate property shall include, but not be limited to, the property described hereafter, and that the separate property of the party shall remain the separate property of the other party."
 

 *603
 
 Following Thomas S. Sharpe's death, Alma G. Seward filed a petition to claim an elective share of her husband's estate on 23 June 2016. "Under
 
 N.C. Gen. Stat. § 30-3.1
 

 et seq
 
 ., a wife who survives her husband may choose to take an 'elective share' of the decedent's assets rather than taking under the decedent's will."
 
 In re Estate of Heiman
 
 ,
 
 235 N.C. App. 53
 
 , 56,
 
 761 S.E.2d 191
 
 , 193 (2014) (footnote omitted). The executor, Thomas F. Sharpe ("Respondent"), filed an answer and reply denying Alma G. Seward's right to claim an elective share.
 

 The Alamance County Clerk of Superior Court conducted a hearing on 17 January 2017 and entered an order granting Alma G. Seward's petition for an elective share. Thomas F. Sharpe appealed to the Alamance County Superior Court on 31 January 2017. On 23 March 2017, Alma G. Seward died. Alma G. Seward's personal representative, Steven Lawrence Seward ("Petitioner"), filed a motion to substitute a party. That motion was granted by an order filed 25 May 2017.
 

 The matter was heard on 15 May 2017 in the superior court. The superior court entered a judgment filed 23 June 2017 denying Petitioner's petition for an elective share. Petitioner gave timely notice of appeal.
 

 II. Jurisdiction
 

 Appeal lies of right in this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2017).
 

 III. Issues
 

 Petitioner argues the superior court erred in concluding the pre-marital agreement between Alma G. Seward and Thomas S. Sharpe waives Alma G. Seward's right to claim an elective share in his estate. Petitioner also contends the superior court improperly took judicial notice of Alma G. Seward's will to interpret the premarital agreement. We address each argument in turn.
 

 IV. Standard of Review
 

 On appeal of estate matters determined by the clerk, the superior court reviews an order of the clerk for purposes of determining: (1) whether the findings of fact are supported by the evidence; (2) whether the conclusions of law are supported by the findings of fact; and (3) whether the order or judgment is consistent with the conclusions of law and applicable law.
 
 N.C. Gen. Stat. § 1-301.3
 
 (d) (2017).
 

 The superior court, and therefore this Court, only reviews those "findings of fact which the appellant has properly challenged by specific exceptions."
 

 *604
 

 In re Estate of Lowther
 
 ,
 
 271 N.C. 345
 
 , 354,
 
 156 S.E.2d 693
 
 , 700-01 (1967) ;
 
 see also
 

 In re Estate of Pate
 
 ,
 
 119 N.C. App. 400
 
 , 403,
 
 459 S.E.2d 1
 
 , 2-3 (1995) ("The standard of review in this Court is the same as in the Superior Court.").
 

 V. Analysis
 

 A. Pre-marital Agreement
 

 Both parties agree the pre-marital agreement at issue was executed both voluntarily and after full disclosure. The order of the clerk reviewed by the superior court contained ten findings of fact. These include:
 

 1. A prenuptial agreement was executed between Thomas S. Sharpe and Alma Seward on November 4, 2009.
 

 *598
 
 2. Thomas S. Sharpe and Alma Seward were marred on November 21, 2009.
 

 3. Thomas S. Sharpe died January 14, 2016 still married to Alma Seward Sharpe.
 

 4. A will for Thomas Sharpe was filed with Alamance County Estate office on February 18, 2016.
 

 5. The will named his son, Thomas F. Sharpe, and his daughter, Susan Sharpe Wall, as co-executors of his will.
 

 6. The will gives the tangible personal property (clothing, jewelry, automobiles, and personal effects) to Susan Wall and Thomas F. Sharpe.
 

 7. The will gives the residue of the estate to the Thomas S. Sharpe Trust which effectively divides the property between the two children, Susan Wall and Thomas F. Sharpe.
 

 8. The widow of Thomas S. Sharpe, Alma Seward Sharp[e], receives nothing under this will.
 

 9. Alma Sharpe, through her Attorney in Fact, Steven Seward, filed this petition [to] get an elective share of the Total Net Assets pursuant to N.C. G.S. 30-3.1 on June 23, 2016.
 

 10. The Prenuptial agreement executed by Thomas Sharpe and Alma Seward contains no clause waiving her right to claim an elective share of his estate.
 

 Based upon these findings of fact, the clerk concluded Alma G. Seward's petition for an elective share should be granted. Findings of
 
 *605
 
 fact 1 through 9 in the clerk's order recited undisputed facts, which were consented to by both parties, and neither party challenges these findings of fact. On appellate review, the superior court determined all of the clerk's findings of fact were supported by the evidence, except for finding of fact 10.
 

 The superior court determined, "Finding of fact 10 is partially correct in that there is not one specific clause waiving the spouse['s] right to claim an elective share of the estate, but the findings supported by the evidence, contradict this statement and conclusively establish the intent of the parties." The only finding of fact at issue is finding of fact 10.
 

 Although it was labelled as a "finding of fact" by the clerk, it is actually a conclusion of law, because it involves a matter of contract interpretation.
 
 Shelton v. Duke Univ. Health Sys.
 
 ,
 
 179 N.C. App. 120
 
 , 123,
 
 633 S.E.2d 113
 
 , 115 (2006) ("Contract interpretation is a matter of law, and the standard of review for this Court is
 
 de novo
 
 .") (citation omitted). The labels "findings of fact" and "conclusions of law" employed by the lower tribunal in a written order do not determine the nature of our standard of review.
 
 See
 

 Peters v. Pennington
 
 ,
 
 210 N.C. App. 1
 
 , 15,
 
 707 S.E.2d 724
 
 , 735 (2011) (reviewing what was labeled as a "conclusion of law" as a finding of fact). If the lower tribunal labels as a finding of fact what is in substance a conclusion of law, we review that "finding" as a conclusion
 
 de novo
 
 .
 
 See
 
 id.
 

 We therefore apply
 
 de novo
 
 review to the clerk's "finding of fact" 10.
 

 To determine whether "finding of fact" 10 is outcome determinative of the issue, we review the terms of the pre-marital agreement. The pre-marital agreement contains, in part, the following pertinent provisions:
 

 WHEREAS, both parties are individually possessed of certain separate property and both acknowledge that they played no role in the accumulation of the other's separate property; and,
 

 WHEREAS, the parties desire to contract with each other concerning matters of the disposition of their separate property;
 

 ....
 

 1.
 
 Division of Property
 
 . Except as provide[d] below, each party agrees that the separate property of the other party shall include, but not be limited to, the property described hereafter, and that the separate property of the party shall remain the separate property of the other party.
 

 *606
 
 ....
 

 2.
 
 Exclusive Right to Manage Separate Property
 
 . Each party has the sole and exclusive right at all times to manage and control their respective separate property to
 
 the same extent as if each were unmarried
 
 . This right to manage and control includes the right to dispose of any or all of that party's separate property by deed, will, or otherwise on that party's sole signature
 
 *599
 
 without any involvement or control by the other party[.] (Emphasis supplied).
 

 ....
 

 3.
 
 Obligation to Join in Execution of Documents and Free Trader Agreement
 
 .... Each party specifically waives, relinquishes, renounces, and gives up any claim that he or she may have or otherwise had or may have made to the other's separate property under the laws of this state. Each party agrees to execute a separate "Free Trader Agreement" to be recorded in the Alamance County Register of Deeds setting forth the intent of the parties.
 

 ....
 

 8.
 
 Agreements with Respect to Home
 
 . The parties will be residing at a home owned by Husband.
 

 1. In the event of the death of Husband, the property shall be the sole and separate property of Husband subject to a right to possession by Wife so long as she maintains the house as her principal residence.
 

 2. If Wife should die and Husband survive, the property shall be the sole and separate property of Husband.
 

 ....
 

 12. Miscellaneous Provisions. To clarify certain aspects of this document's execution and effectiveness, the parties agree as follows: ...
 

 b. This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, personal representatives, successors, and assigns.
 

 ....
 

 *607
 
 13. Entire Agreement. This represents the entire Agreement of the parties with regard to the subject matter hereof. ... All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants, and warranties with respect to the subject matter hereof are waived, merged herein, and superseded hereby.
 

 In interpreting these provisions, we employ several well-established principles of contract construction. Pre-marital agreements are contracts, and "principles of construction applicable to contracts also apply to premarital agreements."
 
 Howell v. Landry
 
 ,
 
 96 N.C. App. 516
 
 , 525,
 
 386 S.E.2d 610
 
 , 615 (1989),
 
 disc. review denied
 
 ,
 
 326 N.C. 482
 
 ,
 
 392 S.E.2d 90
 
 (1990) ;
 
 see also
 
 1 Lloyd T. Kelso,
 
 N.C. Family Law Practice
 
 § 3:7 (2017) ("Premarital agreements, like marital property settlement agreements, are subject to the same rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms.").
 

 If "the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court."
 
 Hagler v. Hagler
 
 ,
 
 319 N.C. 287
 
 , 294,
 
 354 S.E.2d 228
 
 , 234 (1987). "It must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean."
 
 Hartford Acc. & Indemnity Co. v. Hood
 
 ,
 
 226 N.C. 706
 
 , 710,
 
 40 S.E.2d 198
 
 , 201 (1946) (internal citations omitted).
 

 "[T]he object of all interpretation is to arrive at the intent and purpose expressed in the writing, looking at the instrument from its four corners, and to effectuate this intent and purpose unless at variance with some rule of law or contrary to public policy."
 
 Citizens Nat. Bank v. Corl
 
 ,
 
 225 N.C. 96
 
 , 102,
 
 33 S.E.2d 613
 
 , 616 (1945) (citation omitted).
 

 "Courts are not at liberty to rewrite contracts for the parties. We are not their guardians, but the interpreters of their words. We must, therefore, determine what they meant by what they have said-what their contract is, and not what it should have been."
 
 Penn v. Standard Life Insurance Co
 
 .,
 
 160 N.C. 399
 
 , 402,
 
 76 S.E. 262
 
 , 263 (1912).
 

 The Supreme Court of North Carolina's opinion in
 
 Lane v. Scarborough
 
 ,
 
 284 N.C. 407
 
 ,
 
 200 S.E.2d 622
 
 (1973), is instructive in interpreting the pre-marital agreement. In
 
 Lane
 
 , a surviving wife asserted a right to share in her deceased husband's estate.
 
 284 N.C. at 408
 
 ,
 
 200 S.E.2d at 623
 
 . During their marriage, the parties executed a separation agreement, which had no specific express release of the
 
 *608
 
 wife's right to intestate succession.
 

 Id.
 

 The superior court held that the
 
 *600
 
 wife had not released her right to intestate succession and was entitled to share in her deceased husband's estate.
 

 Id.
 

 This Court affirmed the superior court and the Supreme Court reversed.
 
 Id.
 
 at 409, 412,
 
 200 S.E.2d at 624-25
 
 .
 

 In analyzing the separation agreement, the Supreme Court recognized express terms therein, such as "[t]hey agreed ... they would live wholly separate and apart from each other as though they had never been married" and that "each agreed that the other would thereafter hold, acquire, and dispose of all classes and kinds of property, both real and personal, as though free and unmarried."
 
 Id
 
 . at 411,
 
 200 S.E.2d at 625
 
 . The Court also noted the separation agreement stated that each party "released the right to administer upon the estate of the other."
 

 Id.
 

 The Court determined that "the specific terms of the contract are totally inconsistent with an intention that the parties would each retain the right to share in the estate of the other ... if he or she were to become the surviving spouse."
 

 Id.
 

 The Court ultimately concluded: "The provisions that each would thereafter acquire, hold, and dispose of property as though unmarried and that each renounced the right to administer upon the estate of the other refute the contention
 
 *609
 
 that [the wife] intended to retain any rights in her husband's estate."
 

 Id.
 

 Here, the unambiguous language of the uncontested and valid pre-marital agreement plainly establishes the parties intention, prior to their marriage, that Alma G. Seward waived any rights in Thomas S. Sharpe's separate property and that Thomas S. Sharpe waived any rights in Alma G. Seward's separate property. The pre-marital agreement also clearly and unambiguously states "[e]ach party has the sole and exclusive right at all times to manage and control their respective separate property to the same extent as if each were unmarried[,]" and "[e]ach party specifically waives, relinquishes, renounces, and gives up any claim that he or she may have or otherwise had or may have made to the other's separate property under the laws of this state."
 

 The only logical reading of "each party specifically waives ... any claim ... to the other's separate property under the laws of this state," would extend, in light of the entire agreement, to include a spouse's right to claim an elective share under
 
 N.C. Gen. Stat. § 30-3.1
 
 . The pre-marital agreement also expressly states: "This Agreement shall be binding upon and inures to the benefit of the parties and their respective heirs, executors, personal representatives, successors, and assigns." The implications of these express and unambiguous terms "refute the contention that [the wife] intended to retain any rights in her husband's estate."
 
 See
 

 id
 
 . Petitioner's argument is overruled
 

 Petitioner contends that the language in the pre-marital agreement is not sufficiently express or specific to include a waiver or release of Alma G. Seward's right to claim an elective share in her deceased husband's estate. Petitioner cites the case of
 
 Napier v. Napier
 
 ,
 
 135 N.C. App. 364
 
 ,
 
 520 S.E.2d 312
 
 (1999),
 
 disc. review denied
 
 ,
 
 351 N.C. 358
 
 ,
 
 543 S.E.2d 132
 
 (2000), in support of his contention.
 

 At issue in
 
 Napier
 
 was whether a release term under a separation agreement constituted a waiver of alimony.
 
 Napier
 
 ,
 
 135 N.C. App. at 366
 
 ,
 
 520 S.E.2d at 313
 
 . The separation agreement provided:
 

 L.
 
 Mutual release
 
 : Subject to the rights and privileges provided for in this Agreement, each party does hereby release and discharge the other of and from all causes of action, claims, rights or demands whatsoever, at law or in equity, which either of the parties ever had or now has against the other, known or unknown, by reason of any matter, cause or thing up to the date of the execution of this Agreement, except the cause of action for divorce based upon the separation of the parties.
 

 Id.
 

 at 365-66
 
 ,
 
 520 S.E.2d at 313
 
 (emphasis omitted).
 

 This Court concluded that broad language was not sufficiently "express" to constitute a valid waiver of alimony under
 
 N.C. Gen. Stat. § 50-16.6
 
 (b), as it did not "specifically, particularly, or explicitly refer to the waiver, release, or settlement of 'alimony' or use some other similar language having specific reference
 
 *601
 
 to the waiver, release, or settlement of a spouse's support rights."
 
 Id
 
 . at 367,
 
 520 S.E.2d at 314
 
 .
 

 Furthermore, this Court determined that, without regard to the issue of the separation agreement not containing an express waiver of alimony, that:
 

 The preamble to the Agreement specifically states that it is entered into 'pursuant to North Carolina General Statutes Section 50-20(d).' This statute deals with the right of married persons to make agreements with respect to the distribution of their marital property under the equitable distribution statutes. The reference to section 50-20(d) thus reveals the intent of the parties to restrict the Agreement to marital property issues within the scope
 
 *610
 
 of equitable distribution. Issues of spousal support are not within the province of the equitable distribution statute.
 

 Id.
 

 at 367-68
 
 ,
 
 520 S.E.2d at 314
 
 .
 

 Contrary to Petitioner's contention, the ruling in
 
 Napier
 
 is not inconsistent with the determination that the pre-marital agreement before us constitutes a waiver of Alma G. Seward's right to claim a spousal elective share in Thomas S. Sharpe's separate property and estate. The pre-marital agreement at issue expressly states: "[e]ach party has the sole and exclusive right at all times to manage and control their respective separate property to the same extent as if each were unmarried[,]" and "[e]ach party
 
 specifically
 
 waives, relinquishes, renounces, and gives up any claim that he or she may have or otherwise had or may have made to the other's separate property under the laws of this state." (Emphasis supplied). Also, as noted above, the pre-marital agreement states: "This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, personal representatives, successors, and assigns."
 

 Although the pre-marital agreement does not expressly refer to the parties rights to claim upon each other's estate, the plain and unambiguous language does not permit us to read the agreement to mean the parties intended to waive rights to each other's separate property while they were alive, but not after one of them had pre-deceased the other.
 

 Additionally, unlike in
 
 Napier
 
 , the pre-marital agreement here does not have a specific reference to a statute that would limit the scope of the agreement to the scope of that statute.
 
 See
 
 id.
 

 (determining that reference to N.C. Gen. Stat. 50-20(d) limited the scope of the separation agreement to issues within the province of equitable distribution statute). The facts and holding in
 
 Napier
 
 are distinguishable and do not control our analysis with regard to the pre-marital agreement here.
 

 Following
 
 Lane
 
 , and well-settled principles of contract construction, the express language of the pre-marital agreement shows Alma G. Seward voluntarily waived any right to claim a spousal elective share of the decedent Thomas S. Sharpe's separate property. Petitioner's arguments are overruled.
 

 B. Judicial Notice
 

 Petitioner additionally argues the superior court erred, or abused its discretion, by taking judicial notice of the will of Alma G. Seward, which had not been submitted into evidence when this matter was heard before the clerk.
 

 *611
 
 Rule 201 of the N.C. Rules of Evidence permits the trial court to take judicial notice of adjudicative facts, which are defined as those facts which are:
 

 (b) ... [N]ot subject to reasonable dispute in that [they] are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
 

 N.C. Gen. Stat. § 8C-1, Rule 201(b) (2017).
 

 The trial court is required to take judicial notice of certain facts only when a party requests it and supplies the necessary information pursuant to Rule 201(d). Otherwise, taking judicial notice rests within the discretion of the trial court pursuant to Rule 201(c). N.C. Gen. Stat. § 8C-1, Rules 201(c) and (d).
 

 Presuming,
 
 arguendo
 
 , without deciding the superior court acted improperly by taking
 
 *602
 
 judicial notice of the will of Alma G. Seward, Petitioner fails to demonstrate how they were prejudiced.
 

 After concluding Petitioner waived any right to an elective share of the decedent's separate property, the order of the superior court states, in pertinent part, as follows:
 

 Although not necessary to resolve this matter, but as corroboration for the decision
 
 , the Court notes it may take judicial notice of the estate files of this county. The Court again notes that Ms. Seward, in her will,
 
 executed after
 
 the Premarital Agreement, chooses not to bequeath anything to the deceased 'pursuant to a premarital agreement executed by us on November 4, 2009.'
 
 Although the Court does not find there is any ambiguity or doubt as to the meaning of the agreement,
 
 had there been any doubt the will would have resolved it. ... Here, Ms. Seward's statements in her will conclusively establish that she believed, and correctly so, that she had to make NO provision for her husband. This evidence would not be barred by the merger clause in the Premarital Agreement because it was not made prior to or contemporaneously with the agreement. (Emphasis supplied).
 

 The superior court's order is abundantly clear and shows the court did not rely upon Alma G. Seward's will in making its ruling, but only noticed it for corroboration of that decision. Apparent from the face
 
 *612
 
 of the order, the superior court concluded Petitioner was not entitled to claim a spousal elective share with or without taking judicial notice of Alma G. Seward's will. Petitioner fails to demonstrate the superior court's taking judicial notice of Alma G. Seward's will was an abuse of discretion or prejudicial. Petitioner's argument is overruled.
 

 VI. Conclusion
 

 The plain and unambiguous language of the pre-marital agreement between Thomas S. Sharpe and Alma G. Seward indicates Alma G. Seward waived any right to claim a spousal elective share of Thomas S. Sharpe's separate property or estate. Petitioner has demonstrated no abuse of discretion or prejudice from the superior court taking judicial notice of Alma G. Seward's will. The order of the superior court is affirmed.
 
 It is so ordered.
 

 AFFIRMED.
 

 Judges BRYANT and DILLON concur.