IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-1058

Filed 16 July 2024

Onslow County, No. 20E197

IN THE MATTER OF THE ESTATE OF: ROBERT LEE HAYES, III

Appeal by respondent from order entered 13 September 2022 by Judge Clinton Rowe in Superior Court, Onslow County. Heard in the Court of Appeals 19 September 2023.

*Harvell and Collins, P.A., by Wesley A. Collins, for petitioner-appellee.*

*Connell & Gelb PLLC, by Michelle D. Connell, for respondent-appellant.*

STROUD, Judge.

Respondent, executrix of the estate of Robert Lee Hayes, III, appeals from an order granting summary judgment in favor of Petitioner, Susan Ruth Hayes. Petitioner and her husband, Robert Lee Hayes, III, entered a Memorandum of Judgment as a court order in their pending equitable distribution case, and husband died a few days later. As the Memorandum of Judgment set out a complete division of their property and debts, including benefits to be paid after death of the husband, and a provision that "all claims of the parties or either of them for the division of property, spousal support or costs, including counsel fees, are hereby waived and dismissed[,]" the Memorandum of Judgment implicitly waived Petitioner's right to an elective share, and the trial court erred by granting summary judgment in favor of

Petitioner. We therefore reverse the order granting summary judgment in favor of Petitioner.

## I. Background

Robert Hayes ("Decedent") and Susan Hayes ("Petitioner") were married in North Carolina in April 1986. Decedent and Petitioner separated "on or around September 1, 2017." On or about 25 September 2017, Decedent executed a "Last Will and Testament" which gave Petitioner "the smallest portion of [Decedent's] estate, if any, required to be given . . . under applicable law." (Capitalization altered.) On 12 April 2019, Petitioner filed a complaint asking the court to order "the parties' mar[it]al property and debts be equitably distributed between the parties as provided by N.C.G.S. §§50-20 and 50-21." Decedent filed an Answer on 13 May 2019, admitting Decedent and Petitioner own a home in Swansboro, North Carolina and "that all or part of the funds used in the acquisition of said home were marital funds."

On 3 March 2020, the District Court in Onslow County entered a Memorandum of Judgment/Order ("MOJ") by consent of Petitioner and Decedent in their pending equitable distribution case. The MOJ set out a detailed listing of their marital and separate property, including specific retirement plans and accounts and a provision that "all claims of the parties or either of them for the division of property, spousal support or costs, including counsel fees, are hereby waived and dismissed." The MOJ also stated "[a] formal judgment/order reflecting the above terms will be prepared by and submitted no later than 04/14/2020[.]" However, Decedent died on or about 19

March 2020, before the formal judgment was submitted.

On 12 May 2020, Petitioner filed a "Verified Petition for Elective Share[,]"alleging she is entitled to an elective share of Decedent's estate "pursuant to N.C. Gen. Stat. 30-3.1 *et. seq.*" (Capitalization altered.) On 19 August 2020, Ashley Livingston ("Executrix") filed an Answer to the petition denying Petitioner was entitled to an elective share as Petitioner abandoned the marriage, and on 17 November 2020, Executrix filed an Amended Answer asserting Petitioner waived her right to an elective share under the MOJ and requested that "the Court find that the Mediated Equitable Distribution Agreement and Order resolved all matters between the decedent and Susan Ruth Hayes including waiving the right to file for an elective share subsequent to the death of the decedent."

Based upon the issues raised by Executrix's Amended Answer, on 14 December 2020, Petitioner filed a "Notice of Transfer to Superior Court" pursuant to North Carolina General Statute Section 28A-2-4.[1] (Capitalization altered.) That same day the Clerk of Superior Court filed a "Clerk's Order Transferring to Superior Court" finding "the Superior Court is the proper division for the trial of this action" pursuant

---

[1] North Carolina General Statute Section 28A-2-6(h) provides that "[a] notice to transfer an estate proceeding brought pursuant to G.S. 28A-2-4(a)(4) must be served within 30 days after the moving party is served with a copy of the pleading requesting relief pursuant to G.S. 28A-2-4(a)(4), or in the case of the clerk of superior court, prior to or at the first hearing duly noticed in the estate proceeding and prior to the presentation of evidence by the parties, including a hearing at which an order of continuance is entered. Failure to timely serve a notice of transfer of an estate proceeding is a waiver of any objection to the clerk of superior court's exercise of jurisdiction over the estate proceeding then pending before the clerk. When a notice of transfer is duly served and filed, the clerk shall transfer the proceeding to the appropriate court." N.C. Gen. Stat. § 28A-2-6(h) (2023).

to North Carolina General Statute Sections 28A-2-4 and 28A-2-6(h). (Capitalization altered.) On 1 April 2022, Executrix filed a motion for summary judgment alleging "there is no genuine issue as to any material fact" as Petitioner waived her right to an elective share under the MOJ. The trial court heard the summary judgment motion on 22 August 2022, and on 13 September 2022, entered an order granting summary judgment in favor of Petitioner. The trial court's order stated there was "no genuine issue of material fact" and

> [t]he only issue before this Court is whether the "Mediated Equitable Distribution Agreement" attached to the Motion for Summary Judgment operates as a waiver of claims by Petitioner against the Estate of Robert Lee Hayes, III, including, but not limited to, the pending claim for elective share.

The trial court concluded that "the 'Mediated Equitable Distribution Agreement' does not operate to waive claims of Petitioner against the Estate of Robert Lee Hayes, III" and remanded the case "back to the Clerk of Superior Court for Onslow County for proper calculation of the pending elective share claim and any other proper claims relating to the Estate of Robert Lee Hayes, III." Executrix filed written notice of appeal on 29 September 2022.

## II. Standard of Review

"The determination of a party's entitlement to an elective share, as a decision that requires the exercise of judgment and the application of legal principles, is a conclusion of law. The interpretation of a contract is also a conclusion of law. We

review conclusions of law de novo." *In re Estate of Cracker*, 273 N.C. App. 534, 538,

850 S.E.2d 506, 509 (2020) (citations, quotation marks, and brackets omitted).

Further,

> [o]ur standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party.

*In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citations and

quotation marks omitted). Under a *de novo* review, an appellate court "considers the

matter anew and freely substitutes its own judgment in place of the court below."

*Joyner v. N.C. Dep't of Health and Human Servs.*, 214 N.C. App. 278, 282, 715 S.E.2d

498, 502 (2011) (citation and quotation marks omitted).

### III. Waiver of Elective Share of Decedent's Estate

Executrix contends Petitioner waived her right to an elective share of

Decedent's estate by executing the MOJ. Petitioner contends the MOJ did not operate

as a waiver of the right to an elective share, based upon the language of the MOJ.

Under North Carolina General Statute Section 30-3.1(a),

> The surviving spouse of a decedent who dies domiciled in this State has a right to claim an "elective share", which means an amount equal to (i) the applicable share of the Total Net Assets, as defined in G.S. 30-3.2(4), less (ii) the value of Net Property Passing to Surviving Spouse, as defined in G.S. 30-3.2(2c).

N.C. Gen. Stat. § 30-3.1(a) (2023).  Further, under North Carolina General Statute Section 30-3.6(a), "The right of a surviving spouse to claim an elective share may be waived, wholly or partially, before or after marriage, with or without consideration, by a written waiver signed by the surviving spouse[.]"  N.C. Gen. Stat. § 30-3.6(a) (2023).

As the MOJ is a contract between the parties, "[t]he object of all interpretation is to arrive at the intent and purpose expressed in the writing, looking at the instrument from its four corners, and to effectuate this intent and purpose unless at variance with some rule of law or contrary to public policy."  *In re Estate of Sharpe*, 258 N.C. App. 601, 607, 814 S.E.2d 595, 599 (2018) (citation and quotation marks omitted).  Further,

> [i]f the language of a contract is clear and unambiguous, construction of the contract is a matter of law for the court. It must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean.

*Id.* (citation and quotation marks omitted).  Where a contract is clear and unambiguous, the court is not permitted to rely on extrinsic evidence to determine the parties' intent.  *Contrast Patterson v. Taylor*, 140 N.C. App. 91, 96, 535 S.E.2d 374, 378 (2000) (concluding where the term "joint custody" in a separation agreement is ambiguous, "the trial court may consider extrinsic evidence to determine the intent of the parties at the time of the execution of the separation agreement" (citation omitted)).

Here, the MOJ is a court order and states "[t]he parties to this lawsuit have reached an agreement to settle certain matters as set forth specifically in this memorandum[.]" The MOJ had an attached and incorporated spreadsheet setting out the agreed-upon division of 60 items of property and debts, including two pieces of real estate and respective mortgages, bank accounts, credit card debts, 401K, pensions, and personal property. The spreadsheet also indicated which items of property or debt were marital property distributed to Petitioner, marital property distributed to Decedent, property that is being equally divided between the parties, and separate property of either party. In addition to the spreadsheet, the MOJ lists 11 provisions clarifying specific details about the assets and the intentions of the parties:

> a. The parties have divided their marital personal property as shown on the spreadsheet attached hereto.
>
> b. The parties shall list their marital real property located at [redacted] with [Realtor] at a price to be agreed upon by the parties. [Realtor] shall make binding recommendations regarding repairs and upgrades deemed necessary to enhance the sale and the parties shall each pay one-half of any such repairs and upgrades, unless both parties agree that any such repair or upgrade should not be done. Payments made for such repairs and upgrades shall be reimbursed to the parties from the proceeds of the sale. The proceeds of sale shall be applied to commissions and costs of sale, reimbursement of the parties or either of them as set out above and, thereafter, the remaining proceeds shall be divided equally between the parties. Lawnmower is included in sale.
>
> c. [Decedent] shall vacate the marital real property by

April 14 2020[.] [Petitioner] shall thereafter have exclusive possession of said property as the property is made ready for sale and marketed and supervise the completion of necessary repairs and upgrades. [Decedent] shall be allowed to visit or inspect said property at any time accompanied by [Realtor] or her successor.

d. [Decedent] shall pay to [Petitioner] the sum of $31,000.00 on or before Monday, March 9[,] 2020, in lieu of any other distributive award.

e. [Petitioner] shall be entitled to 31% of [Decedent's] United States Marine Corps retirement beginning in April 2020. [Petitioner] and [Decedent] were married for more than 10 years while [Decedent] served on active duty. Therefore [Petitioner] is entitled to direct payment of her share of [Decedent's] retirement from DFAS. The parties will cooperate in the execution and entry of a formal pension division order as may be necessary to implement or clarify this provision.

f. [Decedent] has elected and shall leave in place the election to provide Survivor Benefit Protection for the benefit of [Petitioner]. The premium for said benefit shall be paid from [Decedent's] gross retirement pay and borne pro rata by each party.

g. [Petitioner] shall be entitled to 50% of [Decedent's] FERS retirement. Said sum shall be payable directly to [Petitioner] if regulations so allow. In the event that [Decedent] is required to pay said sum directly to [Petitioner], then [Petitioner] shall be ultimately responsible for the payment of any and all income taxes on any such sum. The parties will cooperate in the execution and entry of a formal pension division order as may be necessary to implement or clarify this provision.

h. Until such time as [Petitioner] is able to receive her share of [Decedent's] USMC and FERS retirement directly from DFAS or FERS, [Decedent] shall pay directly to [Petitioner] 31% of his gross military retirement and 50% of his gross FERS retirement by electronic transfer to

[Petitioner's bank] account . . . . [Petitioner] shall be responsible for all applicable income taxes on such sums paid directly to her.

i. Each party shall make copies of photos in his or her possession and provide such copies to the other party. Each party shall make copies of any personal document or item of memorabilia that is specific to the other party and provide the original to the other party.

j. Except as set out herein, all claims of the parties or either of them for the division of property, spousal support or costs, including counsel fees, are hereby waived and dismissed.

k. That upon any action filed for divorce [Decedent] shall deem [Petitioner] the former spouse and elect her to receive the survivor benefit plan. This will be clarified in the formal order.

Executrix relies on three North Carolina cases to support her contention that "[l]egal precedent makes clear that the right to claim an elective share can be waived implicitly by mediated settlement agreement, consent judgment, premarital agreement, or separation agreement" and to conclude "[b]y executing the MOJ, Petitioner in this case implicitly waived her right to claim an elective share." First, in *Lane v. Scarborough*, our Supreme Court set out the law as to the doctrine of implication of a term of a contract:

A contract, however, encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion. The court will be prepared to imply a term if there arises from the language of the contract itself, and the circumstances under which it is entered into, an inference that the parties must have

intended to stipulation in question. The doctrine of implication of unexpressed terms has been succinctly stated as follows:

Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it. The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just men they ought to have made. However, no meaning, terms, or conditions can be implied which are inconsistent with the expressed provisions.

284 N.C. 407, 410-11, 200 S.E.2d 622, 624-25 (1973) (citations, quotation marks, and brackets omitted).

In *Lane,* the petitioner and her husband had entered into a separation agreement which included provisions that they

would live wholly separate and apart from each other in the same manner and to the same extent as though they had never been married; (2) that no children were born of their marriage; and (3) that they would divide their household furnishings. The remaining paragraphs of the agreement are quoted verbatim:

4. That from and after the date of this Agreement the said party of the second part [the wife] does hereby agree that she will make no demands upon the said party of the first part [the husband] for support and further will incur no

obligations, debts or otherwise which will be or become the responsibility of the said party of the first part.

5. It is agreed that each of the parties may from this date, and at all times hereafter purchase, acquire, own, hold, possess, dispose of, and convey any and all classes and kinds of property, both real and personal, as though free and unmarried, without the consent or joinder of the other party, and each party does hereby release the right to administer upon the estate of the other.

6. Both parties hereunto agree that henceforth neither of them, in any manner will molest or interfere with the personal rights, liberties, privileges or affairs of the other, and each shall henceforth live his and her own personal life as though unmarried, and unrestricted in any manner by the marriage that has heretofore existed.

*Id*. at 408-09, 200 S.E.2d at 623-24 (quotation marks omitted). After their separation but before they were divorced, the husband died. *Id*. at 408, 200 S.E.2d at 623. The husband's parents claimed they were entitled to inherit his entire estate; the wife also claimed she should inherit his entire estate, as they had no children. *Id*.

By order in a declaratory judgment action to resolve the issue "whether [the wife] by executing the separation agreement, released her distributive share as surviving spouse in the estate of [the husband]," the trial court ruled that

by their separation agreement [the husband] and [the wife] did not "mutually release their right of intestate's succession" as provided by G.S. § 29-13 and G.S. § 29-14; that [the wife] is an heir of [the husband] and has the right to inherit from his estate as a surviving spouse.

*Id*. at 409, 200 S.E.2d at 624. The Supreme Court reversed based upon an implicit waiver of the right to inherit, as the surviving spouse had "released her right to share

in [the decedent's] estate by the execution of the settlement agreement[.]" *Id*. at 412, 200 S.E.2d at 625. The Court, in coming to its decision, explained the parties

> declared that they could no longer live together without endangering their health and well-being. They agreed that henceforth they would live wholly separate and apart from each other as though they had never been married and that neither would molest the other or interfere in his affairs. She agreed to make no demands upon him for support and to impose no obligation or responsibility upon him. Each agreed that the other would thereafter hold, acquire, and dispose of "all classes and kinds of property; both real and personal *as though free and unmarried*, without the consent or joinder of the other party" and each released "*the right to administer upon the estate of the other*." . . . Further, they agreed to divide their house-hold furnishings between them.

*Id*. at 411, 200 S.E.2d at 625 (emphasis in original).

The Court in *Lane* noted the title of the agreement, "separation and property settlement agreement[,]" "in the absence of clear language or impelling implications connotes not only complete and permanent cessation of marital relations, but a full and final settlement of all property rights of every kind and character." *Id*. (citation and quotation marks omitted). Further, the Court stated "[t]he provisions that each would thereafter acquire, hold, and dispose of property as though unmarried and that each renounced the right to administer upon the estate of the other refute the contention that [the wife] intended to retain any rights in her husband's estate." *Id*. The Court concluded:

> In this case the intention of each party to release his or her share in the estate of the other is implicit in the express

> provisions of their separation agreement, their situation and purpose at the time the instrument was executed. The law will, therefore, imply the release and specifically enforce it. We hold that [the wife], the surviving spouse of [the husband], deceased, released her right to share in his estate by the execution of the separation agreement of 19 June 1970.

*Id.* at 412, 200 S.E.2d at 625.

Second, in *In re Sharpe*, the petitioner-wife and her husband entered into a pre-marital agreement with

> two schedules attached, Schedule A and Schedule B. Schedule A lists all the separate property belonging to Thomas S. Sharpe and Schedule B lists all the separate property belonging to Alma G. Seward. The pre-marital agreement states that "each party agrees that the separate property shall include, but not be limited to, the property described hereafter, and that the separate property of the party shall remain the separate property of the other party."

258 N.C. App. at 602, 814 S.E.2d at 597.

The trial court ruled that because the premarital agreement did not include a "clause waiving her right to claim an elective share of his estate," the wife was entitled to the elective share. *Id.* at 604, 814 S.E.2d at 598. This Court reversed the trial court, holding that "[f]ollowing *Lane*, and well-settled principles of contract construction, the express language of the pre-marital agreement shows Alma G. Seward voluntarily waived any right to claim a spousal elective share of the decedent Thomas S. Sharpe's separate property." *Id.* at 610, 814 S.E.2d at 601.

The *Sharpe* court examined the language of the entire premarital agreement

to determine if the wife had implicitly waived her right to an elective share. They had agreed that "[e]xcept as provided below, each party agrees that the separate property of the other party shall include, but not be limited to, the property described hereafter, and that the separate property of the party shall remain the separate property of the other party." *Id*. at 605, 814 S.E.2d at 598 (brackets omitted). They also agreed each would have the "sole and exclusive right at all times to manage and control their respective separate property *to the same extent as if each were unmarried*" and each "specifically waives, relinquishes, renounces, and gives up any claim that he or she may have or otherwise had or may have made to the other's separate property under the laws of this state." *Id*. at 606, 814 S.E.2d at 598-99 (emphasis in original). They agreed they lived in a home owned by the husband and this home would "be the sole and separate property of Husband subject to a right to possession by Wife so long as she maintains the house as her principal residence." *Id*. at 606, 814 S.E.2d at 599. They also agreed:

> 12. Miscellaneous Provisions. To clarify certain aspects of this document's execution and effectiveness, the parties agree as follows:
>
> . . . .
>
> b. This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, personal representatives, successors, and assigns.
>
> 13. Entire Agreement. This represents the entire Agreement of the parties with regard to the subject matter

hereof. All prior and contemporaneous conversations, negotiations, possible and alleged agreements and representations, covenants, and warranties with respect to the subject matter hereof are waived, merged herein, and superseded hereby.

*Id.* at 606-07, 814 S.E.2d at 599 (ellipsis omitted).

After analyzing the language of the premarital agreement as instructed by *Lane*, this Court concluded

the unambiguous language of the uncontested and valid pre-marital agreement plainly establishes the parties['] intention, prior to their marriage, that Alma G. Seward waived any rights in Thomas S. Sharpe's separate property and that Thomas S. Sharpe waived any rights in Alma G. Seward's separate property. The pre-marital agreement also clearly and unambiguously states "each party has the sole and exclusive right at all times to manage and control their respective separate property to the same extent as if each were unmarried," and "each party specifically waives, relinquishes, renounces, and gives up any claim that he or she may have or otherwise had or may have made to the other's separate property under the laws of this state."

*Id.* at 608, 814 S.E.2d at 600 (brackets omitted). This Court held the premarital agreement implicitly waived the wife's rights to the husband's estate. *Id.* at 610, 814 S.E.2d at 601.

Finally, *In re Cracker* presents the type of agreement most similar to the MOJ in this case, as *Lane* addressed a separation agreement and *Sharpe* addressed a premarital agreement. *See Lane*, 284 N.C. at 408-09, 200 S.E.2d at 623-24; *see also Sharpe*, 258 N.C. App. at 602, 814 S.E.2d at 597; *Cracker*, 273 N.C. App. at 535-36, 850 S.E.2d at 507-08. In *Cracker*, the petitioner and the decedent "executed a

Mediated Settlement Agreement and Consent Judgment ("MSA")" resolving pending claims for post-separation support, alimony, equitable distribution, and attorney fees. 273 N.C. App. at 535, 850 S.E.2d at 507. This Court summarized the MSA, stating:

> The trial court found that the parties had "agreed to resolve all pending issues"; the MSA was "calculated to finally resolve their financial claims against one another"; and that "the parties waived further findings of fact." The MSA ordered [the d]ecedent to deed certain real property to [the p]etitioner in exchange for [the p]etitioner's assumption and payment of all debts associated with the property. It also provided that [the p]etitioner and [the d]ecedent would have as their "sole and separate property all household furniture and other personal property" at the time in their possession. Additionally, each party "acknowledged sole ownership in the other" of certain personal belongings owned prior to the marriage, inherited during the marriage, or given or loaned to the party by a relative. [The p]etitioner and [the d]ecedent each received a vehicle as "sole and separate property." Each party would be responsible for the debts associated with the assets distributed to him or her and for the debts in his or her individual name. [The p]etitioner and [the d]ecedent retained bank accounts in their respective names as "sole and separate property," and identified retirement accounts and joint bank accounts were distributed to either [the p]etitioner or [the d]ecedent. The MSA specified that the parties had divided all intangible property such as stocks and bonds to their satisfaction, and provided that "neither party shall make any claim against the other for any intangible personal property in the name, possession or control of the other."
>
> [The p]etitioner also "dismissed with prejudice any claim for post-separation support, alimony and attorneys fees associated with said claims." [The d]ecedent was required to make payments of $6,900 to [the p]etitioner in September and October of 2015. The MSA required [the d]ecedent to maintain a supplemental health insurance

> policy covering [the p]etitioner at her cost. At the conclusion of the MSA, the parties agreed that it "contains the entire understanding of the parties, and there are no representations, warranties, covenants, or undertakings other than those expressly set forth herein."

*Id.* at 535-36, 850 S.E.2d at 507-08.

After entry of the MSA but while they were still married, the husband died. *Id.* at 536, 850 S.E.2d at 508. The petitioner filed for an elective share of the decedent's estate, which the trial court denied. *Id.* at 538, 850 S.E.2d at 509. This Court affirmed the denial of the petitioner's claim for an elective share. *Id.* at 535, 850 S.E.2d at 507. Although the MSA did not explicitly address rights of inheritance or elective share, this Court held that the MSA implicitly waived the right to an elective share:

> As in *Lane* and *Sharpe*, the specific terms of the MSA are totally inconsistent with an intention that the parties would each retain the right to share in the estate of the other if he or she were to become the surviving spouse. The MSA resolved all financial claims between the parties by exhaustively identifying the particular property that each spouse would hold as his or her "sole and separate property." *See id.* at 411, 200 S.E.2d at 625 (spouses divided the household furnishings which they jointly owned); *Sharpe*, 258 N.C. App. at 609, 814 S.E.2d at 600 (premarital agreement identified separate property of the spouses). The MSA also completely dismissed [the p]etitioner's claims for post-separation support, alimony, and attorneys' fees. *See Lane*, 284 N.C. at 411, 200 S.E.2d at 625 (wife "agreed to make no demands upon husband for support and to impose no obligation or responsibility upon him"); *Sloop v. Sloop*, 24 N.C. App. 295, 297, 210 S.E.2d 262, 264 (1974) (finding waiver where, inter alia, wife waived "any and all right to alimony and support for

herself"). Although the MSA does not expressly refer to the parties' rights to claim upon each other's estate, "the plain and unambiguous language does not permit us to read the agreement to mean the parties intended to waive rights to each other's separate property while they were alive, but not after one of them had pre-deceased the other." *Sharpe*, 258 N.C. App. at 610, 814 S.E.2d at 601. *See also Sloop*, 24 N.C. App. at 298, 210 S.E.2d at 264 ("It seems inconceivable that either surviving party to this deed of separation could claim upon the death of the other that which manifestly he or she could not claim while both parties were living.").

*Id*. at 540-41, 850 S.E.2d at 510-11 (quotation marks, ellipsis, and brackets omitted).

Petitioner argues the MSA in *Cracker* differs from the MOJ in this case in several relevant and controlling ways. First, she contends that

[t]he Cracker MSA provides that the parties, "agreed to resolve all pending issues", that the MSA was "calculated to finally resolve their financial claims against one another", and that "[t]he parties waive[d] further findings of fact." *In re Estate of Cracker*, 273 N.C. App. at 535, 850 S.E.2d at 507. The MOJ in the present case does not contain any language indicating that all pending issues are resolved, that the MOJ is calculated to finally resolve the financial claims against one another, or that the parties waive further findings of fact.

Here, Executrix argues that as in *Cracker*, the MOJ "resolved all financial claims between the parties by exhaustively identifying the particular property that each spouse would hold as his or her sole and separate property." The MOJ in this case included spreadsheets identifying, classifying, and distributing the marital and separate property and debts. Also like *Cracker*, the MOJ "completely dismissed Petitioner's claims for post-separation support, alimony, and attorneys' fees," as the

final provision stated "all claims of the parties or either of them for the division of property, spousal support or costs, including counsel fees, are hereby waived and dismissed." *Id*. at 541, 850 S.E.2d at 511. Petitioner notes that the *Cracker* Court noted that the MSA did not "expressly refer to the parties' rights to claim upon the other's estate," but still determined that "the plain and unambiguous language does not permit us to read the agreement to mean the parties intended to waive rights to each other's separate property while they were alive, but not after one of them had pre-deceased the other." *Id*. Here, the MOJ goes beyond *Cracker* in addressing property rights upon the death of a party, since it does address post-death benefits to be paid to Petitioner from Decedent's military and retirement benefits.

In comparing the documents here and in *Cracker*, we hold *Cracker* is controlling. Here, the MOJ used different wording than the *Cracker* MSA, but that is to be expected since this was a memorandum of an order specifically contemplating the execution of additional orders to accomplish all the terms of the agreement. In *Cracker*, the MSA was the final, formal court order; no further order was to be entered. *Id*. at 535-36, 850 S.E.2d at 507-08. This MOJ still clearly "dismissed and waived" "all claims" including all financial claims the parties had or may have against each other, and it was a fully enforceable order when it was entered by the District Court. The MOJ did anticipate the entry of additional orders but that does not mean it did not resolve all claims. This MOJ, unlike *Cracker*, addresses federal retirement benefits and survivor benefits which under federal law require the entry of additional

orders. It provides that "[Petitioner] shall be entitled to 31% of [Decedent's] United States Marine Corp retirement beginning in April 2020;" "[Petitioner] is entitled to direct payment of her share of [Decedent's] retirement from DFAS;" and "[t]he parties will cooperate in the execution and entry of a formal pension division order as may be necessary to implement or clarify this provision." In addition, Petitioner was

> entitled to 50% of [Decedent's] FERS retirement. Said sum shall be payable directly to [Petitioner] if regulations so allow. In the event that [Decedent] is required to pay said sum directly to [Petitioner], then [Petitioner] shall be ultimately responsible for the payment of any and all income taxes on any such sum. The parties will cooperate in the execution and entry of a formal pension division order as may be necessary to implement or clarify this provision.

The fact that the MOJ provided for the entry of an additional "formal pension division order" does not mean the parties did not agree to resolve all aspects of their claims as to the division of the benefits; the additional orders were required by applicable state and federal law to accomplish the division of the plans. *See generally* N.C. Gen. Stat. § 50-20(b)(1) (2023) ("Marital property includes all vested and nonvested pension, retirement, and other deferred compensation rights, and vested and nonvested military pensions eligible under the federal Uniformed Services Former Spouses' Protection Act."); 10 U.S.C. § 1408(d)(1) (2023) ("After effective service on the Secretary concerned of a court order providing for the payment of child support or alimony or, with respect to a division of property, specifically providing for the payment of an amount of the disposable retired pay from a member to the spouse

or a former spouse of the member, the Secretary shall make payments (subject to the limitations of this section) from the disposable retired pay of the member to the spouse or former spouse (or for the benefit of such spouse or former spouse to a State disbursement unit established pursuant to section 454B of the Social Security Act or other public payee designated by a State, in accordance with part D of title IV of the Social Security Act, as directed by court order, or as otherwise directed in accordance with such part D) in an amount sufficient to satisfy the amount of child support and alimony set forth in the court order and, with respect to a division of property, in the amount of disposable retired pay specifically provided for in the court order."); *see also* N.C. Gen. Stat. §§ 50-20.1(h)-(j) (2023) (addressing entry of orders required to accomplish the distribution of pension, retirement, or deferred compensation benefits.).

Petitioner also seeks to distinguish *Cracker* by arguing that

> the Cracker MSA provides that the agreement "contains the entire understanding of the parties, and there are no representations, warranties, covenants, or undertakings other than those expressly set forth herein", whereas the current MOJ does not contain any language indicating that the MOJ represents the entire understanding of the parties.

Again, although this MOJ does not use these same words, it does provide that "*Except as set out herein, **all** claims of the parties or either of them for the division of property, spousal support or costs, including counsel fees, are hereby waived and dismissed.*" (Emphasis added.) The MOJ had comprehensively addressed the division of all

- 21 -

parties' assets and debts, both marital and separate, and addressed the payment of benefits from Decedent's Survivor Benefit Protection ("SBP") and retirement plans upon and after his death. Petitioner agreed to "dismiss" the pending claim she had already asserted, equitable distribution, and to "waive" *all* other claims related to the parties' property or spousal support. "Waive" is defined by Black's Law Dictionary as "[t]o abandon, renounce, or surrender (a claim, privilege, right, etc.); to give up (a right or claim) voluntarily." Waive, Black's Law Dictionary (11th ed. 2019). Likewise, "waiver" is defined as "[t]he voluntary relinquishment or abandonment – express or implied – of a legal right or advantage." Waiver, Black's Law Dictionary (11th ed. 2019). Thus, Petitioner agreed to dismiss the pending claim she had already asserted and to "waive" all claims she may have but had not yet asserted related to the parties' property or spousal support. This language is sufficient to show that the MOJ represented the "entire understanding of the parties" as to their property or spousal support rights arising out of their marriage, and those rights logically include the elective share under North Carolina General Statute Section 30-3.1(a). N.C. Gen. Stat. § 30-3.1(a).

Petitioner next seeks to distinguish the MOJ from the *Cracker* MSA by arguing the MSA provided

> that both parties waive any future claims against the other for any intangible personal property in the name, possession or control of the other. *In re Estate of Cracker*, 273 N.C. App. 534, 537, 850 S.E.2d 506, 509 (2020). However, the current MOJ only provides that the parties

> make three waivers: (1) claims for the division of property; (2) claims for spousal support or costs; and (3) counsel fees. The waiver in the MOJ does not reference a general waiver of all financial claims, nor does it reference a waiver of the right to elective share or any estate rights at all.

This too is a distinction without a difference.

Here, the parties waived *all* claims for division of property and spousal support.

> "All" is often used in writing intended to have legal effect as a preface to flexible or imprecise words, as in "all other property," "all the rest and residue," "all and every," "all speed," "all respect." Its purpose is to underscore that intended breadth is not to be narrowed. "All" means the whole of that which it defines – not less than the entirety[.] "All" means all and not substantially all.

*Nat'l Steel & Shipbuilding Co. v. United States*, 419 F.2d 863, 875 (Ct. Cl. 1969) (footnotes omitted). A claim for "any intangible personal property in the name, possession or control of the other" is a more specific wording of a type of claim that falls under the broader language used here, "*all claims*" for division of property. *Cracker*, 273 N.C. App. at 536, 850 S.E.2d at 507-08. The MOJ need not identify each conceivable type of claim or property a spouse may possibly have. Again, we view this provision in the context of a comprehensive and detailed MOJ which addressed property of all sorts: tangible and intangible, real and personal, as well as existing and future rights, as the SBP benefits would not take effect unless and until Decedent predeceased Petitioner and payment of her share of his retirement benefits to Petitioner would also continue after his death.

Next, Petitioner seeks to distinguish the *Cracker* MSA because it consistently refers to the property allocated to each spouse as "sole and separate property" instead of just "separate" property, indicating that each spouse intended to have sole and complete possession of their separate property. *See id.* However, Petitioner stresses that the MOJ at hand does not once refer to "sole and separate property." Although the wording of the MSA in *Cracker* was different in that it referred to "sole and separate" property, the MOJ here accomplished the same effect with different words. The MOJ specifically identified various items of property as the separate property of each party, distributed the marital property to the parties, and then "dismissed and waived" *all* claims as to property or spousal support. Here, the spreadsheet described the agreed-upon classification of each item of property by a numerical code: "Wife's separate" is designated by "4" and "Husband's separate" is designated by "5." Property to be distributed "half to each" is designated by "3," to Wife as "1," and to Husband as "2." Thus, although the MOJ provides the information as to the "separate property" in a more succinct manner on a spreadsheet, the same detailed information regarding the identification of "separate property" is shown on the MOJ here as the MSA in *Cracker*.

We have been unable to discern any legal or practical difference between the use of the word "separate" as it is used in the MOJ along with the distribution of all property and dismissal or waiver of all claims and the use of the words "sole and separate property" in the *Cracker* MSA, given North Carolina law as it stands

currently.  As best we can tell, the phrase "sole and separate" instead of simply "separate" in the context of a resolution of property rights arising from a marriage could be based upon language used in outdated cases addressing the limited rights of women to own or dispose of property.  *See, e.g., Goodrum v. Goodrum*, 43 N.C. 313, 314 (1852) ("The words 'sole and separate use' are those most appropriate to create a separate estate in a married woman independent of her husband. Indeed each of those terms 'separate' and 'sole,' has by itself been deemed sufficient for that purpose, and, especially, when coupled with that of 'disposition' by the wife." (citations omitted)).  Or the use of the phrase "sole and separate" may have originated in the language of Article X, Sec. 4 of the North Carolina Constitution.  *See* N.C. Const. art. X, § 4 ("The real and personal property of any female in this State acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the *sole and separate* estate and property of such female, and shall not be liable for any debts, obligations, or engagements of her husband, and may be devised and bequeathed and conveyed by her, subject to such regulations and limitations as the General Assembly may prescribe." (emphasis added)). But at this time, the North Carolina statutes as adopted by the General Assembly no longer place different "regulations and limitations" on a married woman's right to "devise, bequeath, or convey property" from those applicable to married men.  And Petitioner has not identified any statutory basis for us to give a different legal interpretation to the words "sole and

separate" in *Cracker* as opposed to "separate" in this MOJ.

Just as in *Lane* and *Cracker*,

> [T]he intention of each party to release his or her share in the estate of the other is implicit in the express provisions of their separation agreement, their situation[,] and purpose at the time the instrument was executed. *Lane*, 284 N.C. at 412, 200 S.E.2d at 625. "The law will, therefore, imply the release and specifically enforce it." *Id*. at 412, 200 S.E.2d at 625.

*Cracker*, 273 N.C. App. at 541, 850 S.E.2d at 511.

Upon *de novo* review of the language of the MOJ, we hold Petitioner implicitly waived her right to claim an elective share in Decedent's estate by execution of the MOJ.

Finally, Executrix contends Decedent's Last Will and Testament, executed two years prior to the MOJ, should be admitted to show Decedent's intent. Petitioner also seeks to admit a letter from Executrix's trial counsel indicating his opinion the MOJ did not waive inheritance rights. But as we conclude the MOJ is not ambiguous and it implicitly waived any rights to an elective share, we will not consider the will or letter from Executrix's counsel as both are extrinsic evidence and can be considered only where a contract is ambiguous. *See Bicket v. McLean Sec., Inc.*, 124 N.C. App. 548, 552-53, 478 S.E.2d 518, 521 (1996) ("[W]here an ambiguity exists, the court may step in and consider parol evidence of the parties' intent in forming the contract. An ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties. The trial court's determination

of whether the language of a contract is ambiguous is a question of law; accordingly, our review of that determination is de novo." (citations and quotation marks omitted)).

## IV.    Conclusion

The provisions of the MOJ impliedly waived Petitioner's right to claim an elective share of Decedent's estate. Therefore, the trial court erred in denying Executrix's motion for summary judgment and instead granting summary judgment in favor of Petitioner.   We remand for the trial court to enter summary judgment in favor of Executrix.

REVERSED AND REMANDED.

Judges MURPHY and FLOOD concur.